### RYAN VS. MARTIN.

Where M having retained R & C as his attorneys in an action which he had instituted against B, covenanted and agreed with R & C, severally, to pay to them each, in case of his success therein, $5,000, and in case ten per cent. on the value recovered in such suit should exceed $10,000, then to pay said R & C, each, such additional amount as, with $5,000, should make to each a payment equal to ten per cent. on such value recovered ; provided, that in no case should the said R & C receive anything beyond the amount recovered; and that the suit should not be settled, compromised, or discontinued, or taken out of court, or from the control of said R & C without the payment to each of them of $15,000 ; and before the termination of the suit, M discharged R, and afterwards continued C in his employment as attorney in such action. *Held,* in an action by R against M to recover the $15,000 mentioned :

1. That, however it may have been at common law, the agreement was not champertous, under sec. 214 of the code. (Laws 1856, ch. 120.)
2. That, as between R & C the agreement was several in its nature, and the discharge of R from retainer and employment in the suit, was a breach, for which M became liable to the several action of R.
3. That the $15,000, is not a penalty, but a stipulated and reasonable sum, agreed to be paid in lieu of damages of an uncertain and doubtful nature.

APPEAL from an order of the County Court for *Milwaukee* County, overruling the demurrer of the defendant to the plaintiff's complaint, interposed on the ground that it did not state facts sufficient to constitute a cause of action.

The complaint charges, in substance, that on the 3d day of August, 1857, the defendant commenced an action in the district court of the United States for the district of Wisconsin, on the equity side of said court, in which the said defendant was sole complainant, and one Delorma Brooks was sole defendant; that the answer of said Brooks in said action was filed Dec. 17th, 1857, and that long prior to the commencement

of said action, the defendant *Martin* had duly retained and employed the plaintiff, and one Mat. H. Carpenter, who then were, and ever since have been, duly licensed attorneys and counsellors of said court, practising as such, to bring and prosecute said suit from its commencement to its termination That on the 15th day of February, 1858, and while said action was pending in said district court, the plaintiff in this action, and said Carpenter, and the said defendant, entered into, executed under their hands and seals, in triplicate, and duly delivered one of said triplicates to each of the parties thereto, a written contract, in words and figures following, viz:

"This indenture, made this 15th day of February, A. D. 1858, by and between Warrick Martin, party of the first part, and Edward G. Ryan and Mat. H. Carpenter, party of the second part, witnesseth: That the said *Martin* has employed *Edward G. Ryan* and Mat. H. Carpenter, his sole solicitors and counsel, in a cause depending in the district court of the United States for the district of Wisconsin, in equity, in favor of said *Martin* against De Lorma Brooks, and in consideration of such retainer and employment the said *Martin* has and hereby does covenant and agree to and with said *Ryan* and said Carpenter severally, that he, said *Martin*, will pay to said *Ryan* and to said Carpenter, each, in case of his, said *Martin's*, success in said suit, the sum of five thousand dollars; and in case ten per cent. on the value recovered by said *Martin* in said suit, shall exceed the sum of ten thousand dollars, that then, he, the said *Martin*, will pay to said *Ryan* and to said Carpenter each, such additional amount as with five thousand dollars shall make to each a payment equal to ten per cent on such value recovered. And that in case of disagreement between said *Martin* and said Carpenter and *Ryan* as to the value recovered, the said *Ryan* and said Carpenter to choose one appraiser, and said *Martin* another, and the two thus chosen to choose a third, the written appraisal of any two of said appraisers to be conclusive as to such value recovered. The above stipulated compensation

to be in full for services of said *Ryan* and said Carpenter in the district court. If said cause shall be carried to the supreme court, then if the compensation above provided shall be equal to fifteen thousand dollars to said *Ryan* and to said Carpenter each, then they are to make no additional charge for services in the supreme court. But if the above stipulated compensation for services in the district court shall fall short of fifteen thousand dollars to said *Ryan* and said Carpenter each, then the said *Martin* consents to pay to said Carpenter and to said *Ryan* each, the additional sum of five per cent. on the amount recovered; the amount recovered to be determined as above. Provided, however, that in no case shall said *Ryan* and said Carpenter receive anything beyond the amount recovered in said suit. And said *Martin* further covenants and agrees to and with said *Ryan* and said Carpenter, that said suit shall not be settled, compromised, discontinued, or taken out of court, or from the control of said *Ryan* and Carpenter, without the payment to each of them of the sum of fifteen thousand dollars; that he, said *Martin*, will devote his utmost endeavor to furnish evidence and prosecute said suit."

That after the making of said contract, the suit in favor of the defendant against Brooks, was prosecuted until Oct. 28th, 1861, when the same remained pending and undetermined in said district court, and that during all the time, between the commencement thereof and the last mentioned date, the plaintiff and said Carpenter remained and were the sole solicitors and counsel for said defendant therein, and rendered such services as were needful to its due prosecution, and that on the day last named and before said suit was determined, the said defendant took the same from the control of the said plaintiff and said Carpenter and discharged him from his said retainer and employment therein, and directed him to leave the same to him, said defendant and said Carpenter. The complaint further states that on the day last named, the plaintiff was ready and willing to continue in his employment and retainer

in said suit and render all needful services therein, as the said defendant well knew; that the plaintiff at all times kept and performed all the conditions and stipulations of said written contract, and of his contract of retainer as aforesaid; that the defendant took said suit from the control of the plaintiff and said Carpenter, and discharged the plaintiff therefrom, without any fault or neglect of the plaintiff, or any reasonable excuse, and without paying to the plaintiff said sum of $15,000, stipulated in said contract to be paid in the event of the defendant taking said suit from the control of the plaintiff and said Carpenter; that said sum remains unpaid, and that the defendant refuses to pay the same. The complaint concludes with a demand for judgment for said sum of $15,000, with interest from the 28th day of October, 1861, besides costs.

*Asahel Finch*, for the appellant:

The demurrer is well taken, because, 1. The contract set forth in the complaint is champertous, and therefore void. *Lewis v. Bell*, Jones' Eq., 100; *Thurston v. Percival*, 1 Pick., 415; *Lathrop v. Amherst Bank*, 9 Met. 489; *Backus v. Byron*, 4 Mich., 535; *Scoby v. Ross*, 13 Ind., 117; *Key v. Vattier*, 1 Ham., 132; 17 Ala., 296, 303; 7 Porter, (Ala.) 488.

This court in a recent case, *Barker vs. Barker* 14 Wis. 131, have enunciated the doctrine that the law of champerty is in force in this state.

In the case of *Stanley vs. Jones*, 7 Bing. 349, TINDAL C. J., defines champerty to be the unlawful maintenance of a suit in consideration of some bargain, to have a part of the thing in dispute *or some profit out of it.* This definition has generally been adopted by the courts in this country—2 Pars. Cont. 263; 1 Pick. 415; 9 Met. 489; 13 Ind. 117.

Applying the tests recognized in the cases cited to this contract, it is clearly champertous. It contains an agreement to render aid in the prosecution of the suit, likewise to share in the profits or fruit of the litigation, which profits are to be graduated by the amount or value recovered and in this re-

spect is analogous to the cases in 1 Pick. and 9 Met. *supra.*

2. The contract is illegal and void by reason of the provision that said suit shall not be *settled, compromised, discontinued,* or taken out of court, or from the control of said Ryan and associate without the payment to each of them of $15,000. This provision is manifestly against the policy of the law. Smith on Cont. 204–217. It tends to promote litigation and obstruct the course of justice, and puts the *interest* and *duty* of the attorneys in opposition to each other. *Merritt vs. Lambert* 10 Paige 359; *Key vs. Vattier,* 1 Ham. 132.

3. But conceding the validity of the contract, the action is prematurely commenced. The complaint shows that the suit has not been "taken from the control of Ryan *and Carpenter.* If Ryan can sue for $15,000, so can Carpenter, although the suit has not been taken from his control. Unless the covenant is broken neither can recover; if it is, both can.

4. The contract provides " that in *no case* shall said Ryan & Carpenter receive anything beyond the amount recovered in said suit " and the plaintiff cannot recover his $15,000, without averring that at least that sum has been recovered.

5. The provision of the contract that Martin shall not do a certain act "without paying to the plaintiff $15,000," is a penalty, and will not be enforced. 2 Pars. Cont. 434–5. In *Astley vs. Weldon,* 2 Bos. & Pul. 346, the court say; "where articles contain covenants for the performance of several things, and then one large sum is stated at the end, to be paid upon breach of performance, that must be considered as a penalty." *Kemble vs. Farren,* 6 Bing. 141; 19 Eng. C. L. 34; *Heard vs. Bowers,* 23 Pick. 455; *Curry vs. Laser,* 7 Pa. St. 470. If the payment of the money appears to have been intended only to secure the performance of the main agreement, the court incline to hold it a penalty. 1 Pars. Cont. 441, note. *Merrill vs. Merrill,* 15 Mass. 488. It is evident that the payment of the $15,000, was not intended as a compensation for the plaintiffs services, but was intended " to secure the performance of

the main object of the agreement" and it must therefore be held a penalty and not liquidated damages. The demurrer is therefore good, as the plaintiff has not averred, nor does he seek to recover, as on a *quantum meruit,*

6. The plaintiff could not abandon the special contract and recover as on a *quantum meruit.* Sections 19 and 20, ch. 140, R. S., have no application to this case, and apply only to penal bonds or recognizances, which on their face purport to name a penal sum, subject to a condition.

*E. L. Buttrick,* for respondent.

1. Conceding that the contract is void, the respondent is entitled to recover for the antecedent services. *Thurston vs. Percival,* 1 Pick. 415. If this contract be for any reason inoperative or void as against one party, it should be so held, as against the other, and the respondent left to his *quantum meruit* for all his services. Whatever may be the view of the court now, of the technical existence of the old doctrine of champerty, it has utterly lost all taint of immorality, and the maxim *ex dolo malo, non oritur actio* has no application. The modern doctrine regards champerty, not as *malum in se,* not even as *malum prohibitum,* but as a thing merely within the technical language of obsolete laws. 4 Durn & East 340–1; *Thallimer vs. Brinckerhoff,* 3 Cow. 613; *Sedgwick vs. Stanton* 14 N. Y. 293. If the contract be void, it is equally void as to both parties, and the original assumpsit applies to all the services preceding and subsequent; and it would be equally unjust, that the defendant insisting upon its illegality, should set it up in discharge of his liability for the subsequent, as for the prior services. *Caldwell vs. Shepherd,* 6 Mon. 389; 4 Lit. 411.

2. The contract was not champertous. The decisions of other states in regard to the force of English statutes in aid of the common law, have no application here. In 1810, when the present state of Wisconsin was a part of the territory of Michigan, the legislative power of that territory, enacted that no act of the parliament of England or of Great Britain

should have any force within the territory. R. L. Mich. 1833, p. 563. This act remained in force until our own revision of 1839, which contained in substance the same provision. R. S. 1839, p. 409. This act remained in force until the revision of 1849 when it was repealed, R. S. 1849, p. 750, but the repealing act did not revive any act previously in force, p. 60, and the same provision is still retained, R. S. 1858, p. 83. Therefore the court cannot give effect to any English statute, unless by assuming the absolute power of legislation, and by repealing the very acts of the legislature itself. Counsel contended that there was no English adjudication, of which any trace exists, defining the law of maintenance and champerty prior to the first statute on that subject in the third year of Edward 1st, and that no decision upholding the general doctrine of champerty and maintenance can be found, which rests solely on the common law, and does not rely on the English statutes and the adjudications under them.

But if the doctrine exists here at all, it exists only at the common law. It has been defined as a species of maintenance, being a bargain with a plaintiff or defendant, *campum partire*, to divide the land or other matter sued for, if they prevail at law, *whereupon the champertor is to carry on the party's suit at his own expense,* 4 Black Com. 135 ; 2 Story Eq., § 1048 ; 2 Chitty Crim. Law 234 note A ; 20 Johns 400 ; 23 Barb. 421 ; 4 Duer. 283 ; 1 Seld. 347 ; 1 Ham. 65. In the present case this ingredient of champerty is wanting, and for this reason alone, the contract is not champertous. In this case the respondent and Mr. Carpenter had before the making of the contract earned from the appellant the right to compensation for services rendered, and were his creditors for it and had a lien upon his recovery for that amount, and for this reason the agreement was not champertous. *Barker vs. Barker,* 14 Wis., 131; 3 Cow. 647 ; 6 Johns, Ch. 317 ; 10 Wend. 617 ; 1 Cow. 172 ; 14 Vt. 485 ; 9 Shep. 318 ; and this case is strictly within the exception recognized by the cases cited. But whatever may have been be-

fore the rule, it was certainly settled by ch. 120 sec. 214, Laws 1856, p. 186, which repeals all existing rules and provisions of law restricting or controlling the right of a party to agree with an attorney, solicitor or counsel and provides that thereafter such compensation shall be left to the parties. This was the law when the contract was made, and this section is identical with the provision of the New York code. Voorhies Code, § 303. In New York, this section was held to abolish champerty as between lawyer and client, before its adoption in this state. *Satterlee vs. Frazer,* 2 Sand., 141; *Benedict vs. Stewart,* 23 Barb., 420; *Ward vs. Lyme,* 9 How. Pr., 16; *Easton vs. Smith,* 1 E. D. Smith, 318; 14 N. Y., 289, 322; 1 Seld., 320. When a statute is borrowed from another state, which has there received an exposition, the legislature is presumed to have enacted it with reference to such exposition. 2 Pet., 1; 29 Me., 9; 3 Scam., 288; 20 Vt., 49; 21 id., 256; 16 Ohio, 599. 3. The question of public policy is set at rest, by the section of the code already cited, and all arguments as to what public policy *ought* to be, must give way to this authoritative declaration by the legislature of what *is* the public policy. 4. The sum agreed to be paid upon the dismissal of the counsel from the case was not a penalty, but was for liquidated damages. Sedgwick on damages, chap. 16; Addison on Cont., 174; 4 Burr, 2225; 3 Y. & J., 304; 2 B. & P., 351; 3 Barn & Ald., 652; 3 Carr & P., 240; 3 M. & W., 551; 2 Term, 36; 17 Wend., 447; 22 id., 201; 26 id., 630; 7 Cow., 317; 7 Met., 583. Here the parties have estimated and liquidated the damages, and have inserted the sum as the amount to be paid on breach, and the court is bound so to consider it. *Dennis vs. Cummings,* 3, John Ch., 167; the case of *Pierce vs. Jung,* 10, Wis. 30, must be considered as settling the question.

5. It would have been a breach of the contract with the respondent, for the appellant to have dismissed both of the counsel, or Mr. Carpenter alone, and it is assuredly a breach, to dismiss the respondent. 6. The covenant for the payment

of $15,000, does not depend on success at all, and is very clearly an independent covenant.

*By the Court*, DIXON, C. J. In this case it was unanimously resolved by the court:

1. That however it might have been at the common law, the agreement set forth in the complaint was not champertous under section 214, of the code, (Laws of 1856, chap. 120,) then in force, and which was in these words: "All statutes establishing or regulating the costs or fees of attorneys, solicitors and counsel in civil actions, and all existing rules and provisions of law restricting or controlling the right of a party to agree with an attorney, solicitor or counsel for his compensation, are repealed; and hereafter the measure of such compensation shall be left to the agreement, express or implied, of the parties."

2. That as between Mr. Carpenter and the plaintiff, the agreement was several in its nature, and the discharge of the plaintiff from retainer and employment in the suit was a breach for which the defendant became liable to the several action of the plaintiff. The language of that part of the agreement is, that the "suit shall not be taken from the control of said *Ryan* and Carpenter, without the payment to each of them of the sum of fifteen thousand dollars." Taken literally this would require the discharge of both in order to constitute a breach. But we are not confined to the strict letter nor the identical clause. We are to look to the whole agreement to ascertain the intention of the parties. In doing so, we find that the agreement is, in all other respects, several; and it becomes obvious that neither *Mr. Ryan* nor Mr. Carpenter would have entered into it, had they supposed that either could be discharged and the suit left to the sole management of the other, without the compensation fixed by the clause referred to.

3. That the fifteen thousand dollars is not a penalty, but a

stipulated and reasonable sum to be paid in lieu of damages, of an uncertain and doubtful nature.

The order of the county court, being in accordance with these resolutions, is affirmed.