## ALLARD vs. LAMIRANDE.

*Champerty and maintenance. Judgment, grounds for reversal. Verdict.*

1. The common law with regard to champerty and maintenance is in force in this state, with the qualifications established by modern authorities.

2. If it be proved on the trial of an action that the plaintiff's attorneys are prosecuting it in pursuance of a champertous agreement with their client, the action should be dismissed on motion of the defendant.

3. An attorney-at-law may contract to render services in the conduct of a suit for a fee *contingent* upon his success therein; and it seems that such fee may be a stipulated percentage of the amount that may be recovered.

4. An agreement by an attorney-at-law to conduct a suit for the recovery of real property on condition, that in case of such recovery, a certain portion of the property shall be conveyed to him, is not champertous, where he does not undertake to pay any part of the expenses of litigation. Otherwise in case of such an undertaking.

5. In a contest between client and attorney, however, the court will scrutinize closely any agreement between them as to the compensation of the latter, and refuse to enforce it if inequitable to the client.

6. A judgment will not be reversed merely for the giving of an instruction not strictly accurate in form, if it could not mislead the jury.

7. Thus, where the jury were instructed that, if satisfied that defendant *testified falsely* in any respect on the trial, they might reject *all* his testimony, it must be presumed that they would understand the instruction to refer only to willful falsehood, and not to innocent misstatement; and the judgment will not be reversed for such instruction.

8. Where the issues under the pleadings in ejectment were, whether plaintiff was the "absolute owner in fee simple" of the premises, and whether defendant unlawfully withheld the possession from him, a general verdict "for the plaintiff" finds both these issues in his favor.

9. Although such verdict is not in the *form* required by the statute, the judgment will not be reversed on that ground, no " substantial right of the adverse party " being affected by it. Sec. 40, ch. 125, R. S.

APPEAL from the Circuit Court for *Brown* County.

Action of ejectment. The case, so far as is necessary to a full understanding of the points raised, is stated in the opinion.

*Hastings & Greene*, for appellant, as to what constitutes champerty or maintenance, cite 4 Black. Com., 134; *Backus v. Byron*, 4 Mich., 535, 538, 539; *Lathrop v. Amherst Bank*, 9 Met., 489. 2. To the point that champerty is opposed to the policy of the common law as modified and recognized in this state, they cite *Lafferty v. Jelley*, 22 Ind., 471; 21 id., 479; 13 id., 117; Story on Con. § 581; 2 Bishop Crim. Law, § 137; *Barker v. Barker*, 14 Wis., 131; *Miller v. Larson*, 19 id., 463; *Martin v. Veeder*, 20 id., 466; Sharswood's Legal Ethics, 156; 5 Johns. Ch., 48; 1 Pick., 415; 5 Paige, 311; 2 Denio, 607. 3. Sec. 216 of the Code, under which the case of *Ryan v. Martin*, 16 Wis., 57, and 18 id., 672, was decided, was repealed by being omitted in the subsequent revision of the statutes, leaving the common law in force. *State v. Conkling,*, 19 Cal., 501; *Pingree v. Snell*, 46 Maine, 544; *Ellis v. Paige*, 1 Pick., 43, 45, 154; 14 Ill., 334; 7 Mass., 140; 10 Pick., 39; 31 Vt., 607; 9 Pick., 97; *Lewis v. Stout*, 22 Wis., 234; Broom's Legal Maxims, 22; *State v. Rollins*, 8 N. H., 550; *Stearns v. Felker*, 28 Wis., 594; Potter's Dwarris on Stats., 160; *Smith v. Hoyt*, 14 Wis., 252. 4. That section, if still in force, does not sanction this agreement, because by it the client is to be subjected to *no loss* in case of failure. *Brotherson v. Consalus*, 26 How., 213; 5. It is within the letter and spirit of sec. 53, ch. 169, R. S. *Swett v. Poor*, 11 Mass., 549; *Brinley v. Whiting*, 5 Pick., 348; 1 Hawkins' Pleas of the Crown, Curn. Ed., p. 470, § 1; *Norton v. Sanders*, 1 Dana, 14; *Chiles v. Conley*, 9 id., 385. 6. If not within that statute, it is within the exact letter, of the statute of 32 Henry VIII., C. 9, which is the common law of this country. Kelly's Reports of Statutes 232 : 2 Bishop's Crim. Law,

§ 138; 5 Pick., 348; 19 Wis., 300. 7. It was the duty of the court to dismiss the action when it appeared that it was prosecuted under such an agreement. *Barker v. Barker*, 14 Wis., 131; *Webb. v. Armstrong*, 5 Humph., 379; *Morrison v. Deaderick*, 10 id., 342; *Hunt v. Lyle*, 8 Yerg., 142. 8. To justify the jury in rejecting all the testimony of a witness because he has testified falsely as to one thing, he must have so testified as to a *material fact,* and *knowingly.* *The Santissima Trinidad*, 7 Wheat., 283, 338, 389; 1 Phillips' Ev. (5th Am. ed.), 613; *Morley v. Dunbar*, 24 Wis., 183; *Mercer v. Wright*, 3 Wis., 645. 9. The verdict is not in the form prescribed in the statute, and does not support the judgment. It does not describe the premises nor specify the estate recovered, as required by sec. 14, chap. 141, R. S. *Mead v. Bagnall*, 15 Wis., 156; 19 id., 55; 7 id., 253; *Rawlings v. Bailey*, 15 Ill., 178.

*Hudd & Wigman*, for respondent, contended that the verdict and judgment, being clearly right, will not be set aside on account of any error in the instruction relating to the effect of defendant's testimony (15 Wis., 50; 17 id., 672; id., 145); that the defendant should have objected to the verdict if informal, otherwise the error will be disregarded; but that it was sufficient, since the complaint claimed a single piece of land by government subdivision, and the answer was only a general denial. R. S. ch. 132, secs. 10, 11; 13 Wis., 419; 10 id., 499; Tyler on Ejectment, 580; 19 Abb. Pr., 314; 3 Rob., 633; 3 Code R., 152. 2. The law of champerty in this state remains as modified by section 214, chap. 120, Laws of 1856. The common law was thereby repealed, and could not be revived by a mere repeal of the repealing act, R. S., chap. 5, sec. 3. Having borrowed this statute from the state of New York, we take it subject to the authorities. 2 Peters, 1; 29 Me., 93; 3 Scam., 288; 20 Vt., 49; 21 N. H., 256; 6 Ohio, 599. 3. The agreement between plaintiff and his attorneys is not champertous, they not agreeing to carry on the suit at their own expense. 4 Bl. Com., 135'; 2 Story Eq., 1048; 2 Chitty Com. Law, 234;

20 Johns. 400; 23 Barb. 421; 4 Duer, 284; 1 Seld., 347; 1 How., 65; 2 Sandf., 141; 23 Barb., 420; 9 How. 16; 1 E. D. Smith, 318; 14 N. Y., 289; 1 Seld., 320; 16 Wis., 65; 29 Iowa, 170.

LYON, J.    This action is to recover certain land in the county of Brown. The complaint is in the usual form, and the answer thereto is a general denial. The verdict and judgment in the circuit court were for the plaintiff, and the defendant appeals from the judgment, and seeks to reverse it on three grounds.

I. He claims that a champertons agreement between the plaintiffs and his attorneys relating to the compensation of the latter for their services in the action, was proved on the trial, and that the circuit court erred in denying the motion of the defendant to dismiss the action because of such agreement.

II. The court gave the following instruction to the jury : " If the jury are satisfied from the evidence that the defendant, *Lamirande*, testified falsely in any respect on the trial of this cause, they may reject all his testimony; it being an established rule of evidence that witnesses proven to be false in one thing may be presumed to be false in all things." This instruction, to which there was a general objection, is claimed to be erroneous because the word "*knowingly*" was not inserted therein as a qualification. That is to say, it is contended that the instruction should have been, that " if the jury are satisfied from the evidence that the defendant, *Lamirande*, *knowingly* testified falsely, etc., and that the omission of such qualifying word therefrom renders the instruction erroneous.

III. It is claimed that there is a fatal defect in the form of the verdict, which is as follows; "Now come the jury in this cause, and severally say on their oaths that they find for the plaintiff."

We will consider these alleged errors in their order.

I. The common law in regard to champerty and mainten-

ance, with the qualifications established by the modern author-
ities, is in force in this state. *Barker v. Barker*, 14 Wis., 131;
*Miller v. Larson*, 19 id., 463; *Martin v. Veeder*, 20, id., 466;
*Stearns v. Felker*, 28 id., 594. In the first of these cases it was
said, that when it shall be made to appear to the court in which
an action is pending that it is prosecuted pursuant to a cham-
pertous agreement, the court should refuse longer to entertain
such action. This is doubtless a correct statement of the law on
the subject. If, therefore, it was proved that the attorneys were
prosecuting this action pursuant to a champertous agreement
with the plaintiff, the motion to dismiss should have been granted.

We are not left in doubt as to the terms of the agreement
between the plaintiff and his attorneys, upon which this claim
of champerty is predicated. That agreement is in writing, was
put into the case by the defendant on a motion for a new trial,
and is set out in the bill of exceptions. There is nothing in the
testimony given upon the trial which shows, or tends to show,
that there was any other or different agreement under which the
action was prosecuted. This written agreement is, simply, that
the attorneys will conduct this action as attorneys, and perform
all necessary services therein, until final judgment; for which
services the plaintiff agreed to convey to them one-half of the
land in controversy in the action. Is this agreement champer-
tous? By champerty is meant "a bargain with the plaintiff or
defendant, *campum partire*, to divide the land or other matter
sued for between them, if they prevail at law; whereupon the
champerter is to carry on the party's suit at his own expense."
4 Bl. Com.. 135. It has been said that, where the attorney
contracts in advance for a part of the property sued for as com-
pensation for his services, he does, in a certain sense, by the act
of rendering the services, carry on the suit at his own expense,
in part at least, although he has not contracted in terms to pay
any portion of the expenses of the litigation. Cases are not
wanting in the books which so hold, and it has often been ad-
judged that contracts like that between the plaintiff and his.

attorneys are champertous.   On the other hand, there are cases of equal authority which hold that an attorney may lawfully contract with his client for part of the property sued for as compensation for his services, provided he does not also agree to pay the expenses of the suit, or some portion thereof.   We have carefully examined these conflicting decisions, but it will serve no useful purpose to comment upon them at length.   Many of them are cited and commented upon in the cases of *Backus v. Byron*, 4 Mich., 535, and *Bayard v. McLane*, 3 Har. (Del.), 139. See also *McDonald v. Chicago and N. W. R. Co.*, 29 Iowa, 170. The later New York cases, cited in the brief of counsel for the plaintiff, are supposed to be governed by a provision of the code of that state, not found in our present statutes, and are therefore not relied upon as authority.   The same provision, however, was contained in our Code of 1856, (Laws of 1856, chap. 120, sec. 214), and under it the case of *Ryan v. Martin*, 16 Wis., 57, was decided.

In some of the other cases referred to, particularly that of *Backus v. Byron*, the decisions were controlled or influenced by statutory provisions.   The statute of Michigan prohibited an attorney from buying, or being in any manner interested in buying any bond, promissory note, bill of exchange, book debt or other thing in action, with the intent and for the purpose of bringing a suit thereon; and from advancing any money, etc., as an inducement or consideration for having placed in his hands any debt, etc., or thing in action for collection.   A violation of this law was made punishable by fine or imprisonment, or both, in the discretion of the court.   In the case last cited, it is very pertinently asked, "Can it be less an offense for an attorney to purchase land, with the avowed object and purpose of prosecuting a suit for its recovery?" (P. 552.)   We are not aware of the existence of any law of this kind upon our statute books applicable to attorneys, but we have such a law affecting justices of the peace and constables only.   R. S., ch. 120, sec. 237.

In all of the agreements which have been held by this court to be champertous, there were express covenants or stipulations that the champerters should pay the expenses of the litigations; and the court has never determined the character of an agreement like that under consideration. We are, therefore, at liberty to adopt and follow the line of decisions which seems to us to be in accordance with justice and sound reason.

Applying these tests to the numerous decisions on the subject, we do not hesitate to approve and follow those which hold that agreements between client and attorney like that under consideration, are not champertous.

To hold otherwise would be to apply to such agreements the strictest rules of the old common law concerning champerty, when, as already stated, we have, in this state, only adopted the common law rules in a modified form, that is, with the qualifications established by the modern authorities. We have also seen that the modern authorities, or at least some (and, as we believe, the soundest) of them, so modify those rules as to relieve this contract from the taint of champerty.

The history of the application of the old common law rules concerning champerty and maintenance, will satisfy almost any person that those rules greatly needed to be qualified and restricted, either by judicial decisions or in some other manner equally as effectual. For illustrations, see 2 Bishop on Crim. Law, sec. 129. That an attorney may contract with his client for a fee in an action, contingent upon success, is not denied. For example, he may bring an action upon a note for the payment of five hundred dollars, and may make an agreement with his client, which will be legal and binding, that if he collects the note he shall receive a stipulated fee, say one hundred dollars, therefor, but that if he fails to collect it he shall have nothing for his services. Such an agreement is neither unlawful, immoral or disreputable. At least it is not necessarily so. Now suppose, that instead of being for a specified contingent fee, the contract is that the attorney shall receive for his services

a certain per centage of the amount collected, or if, as in this case, the action be to recover land, that he shall have a share of the land recovered, wherein would it differ in principle from the contract first supposed? We confess our inability to comprehend the difference between them.

It should be observed that whenever a contest arises between the client and his attorney concerning the compensation of the latter for his services, the courts will closely scrutinize their contracts relating to such compensation, and if any undue advantage has been taken by the attorney, which renders the contract inequitable and unjust to the client, it will not be enforced.

Upon the whole, we see no good reason founded on principles either of justice, public policy or professional propriety, for holding that the agreement between the plaintiff and his attorneys is champertous; although, under the authorities, it would be otherwise had the attorneys agreed to pay the expenses of the action.

II. Was the instruction, to which exception was taken, erroneous? It is clear that the learned circuit judge intended to give the jury a correct application of the maxim, *falsus in uno, falsus in omnibus*; and, conceding that he might have done so, with more precision by the use of the word, " knowingly " in the proper connection, we think that he substantially accomplished such intention. Every man of common sense knows that an innocent mistatement of a fact by a witness, is no impeachment of the credibility of such witness. Presuming that the jurors in this case were men of ordinary intelligence, we cannot believe that any of them could have understood that the judge intended to instruct them that, if the defendant testified falsely in any particular, he was thereby impeached, even though he honestly believed that he was stating the facts as they were. We do not find here any sufficient ground for reversing the judgment.

III. The verdict is not in the form prescribed by the statute.

It is a general verdict for the plaintiff, while the statute is that, in actions for the recovery of specific real property, " the verdict shall specify the estate which shall have been established on the trial by the plaintiff in whose favor it shall be rendered, whether such estate be in fee, for his own life, or for the life of another, stating such lives, or whether it be for a term of years, and specifying the duration of such term." R. S., chap. 141, sec. 14, subdivision 7.

Under the pleadings, two issues or questions of fact were submitted to the jury. These were: 1st, Whether the plaintiff was the absolute owner "in fee simple" of the land in controversy, as averred in the complaint; and 2nd, whether the defendant unlawfully withheld the possession thereof from him as therein charged. The general verdict for the plaintiff is a finding upon both these issues in his favor. It is a finding that the plaintiff was the absolute owner in fee simple of such land, and that the defendant unlawfully withheld from him the possession thereof. *Everit v. The Walworth Co. Bank*, 13 Wis., 419; *Krause v. Cutting*, 28 id., 655.

The substance of the verdict is precisely what the statute requires it to contain. But it is not in the *form* prescribed by the statute. In that respect it is defective. Should the judgment be reversed because of such formal defect, which cannot possibly affect the rights of any one? This question is answered in the negative by the provisions of sec. 40, chap. 125, R. S. "The court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect."

The judgment of the circuit court must be affirmed.

*By the Court.*—Judgment affirmed.