DUKE et al. v. HARPER et al., *Appellants*.

**Champerty.** In this State, champertous contracts are void; but, a contract between attorney and client is not champertous, because the attorney agrees to receive, as a compensation for his services, a portion of the property in controversy; it is an essential element in a champertous contract, that he also agree to pay some portion of the costs or expenses of the litigation.

*Appeal from St. Louis Court of Appeals.*

Respondents sued for damages sustained by them, by reason of the breach of a contract for the conveyance by appellants of one-fourth interest in certain property, which was to be recovered in proceedings to be instituted for appellants, and in their name by respondents as attorneys at law, in proper courts. The conveyance was to be made in consideration of the professional services to be rendered by respondents in conducting the legal proceedings necessary for its recovery. Appellants demurred on the ground that the contract, on which the suit was founded, was champertous. The trial court sustained the demurrer, and judgment was rendered for appellants. This judgment was affirmed by the court at general term. By the St. Louis Court of Appeals the judgment of the circuit court was reversed and remanded; and the case is here by appeal from that judgment.

*Martin & Lackland* for appellants.

The first point we make is, that the statute law of Missouri, declares a contract of the kind referred to null and void, and is found in 2d Wag. Stat., p. 866, Sec. 1, as follows: "The common law of England and all statutes and acts of parliament made prior to the fourth year of James I, and which are of a general nature not local to that kingdom, which common law and statutes are not repugnant to, or inconsistent with the constitution of the United States, the constitution of this State, or the statute law in force for the time being, shall be the rule of action and decision in this State, any law or custom to the contrary notwithstanding." This has been the law on our statute books ever since the year 1816, when the Spanish law was abolished, and is now the law of this State. It is admitted in the opinion of the court below, that champerty was illegal prior to and in the fouth year of James I. in England.

Then, if it was illegal in the fourth year of James I., there are three questions to settle, in order that we may determine if the section referred to covers the case at bar:

1. Are the English statutes and common law on the subject of champerty of a "general nature, not local to that kingdom?"

2. Are they "repugnant to the constitution of the United States?" and,

3. Are they in conflict with any "statute law in force at the time being or the constitution of this State?"

In order to determine these questions, we will call the attention of the court to the substance of these various enactments. The first we find is the statute of Westminster 1, (3d Edw. 1,) Ch. 2, which says: "That no officers of the king, by themselves, nor by others, shall maintain pleas, suits, or matters hanging in the king's court, for lands, tenements, or other things, for to have a part or profit thereof."

The statute of West. 2, (14 Edw. 1,) Ch. 49, enacts,

"That the chancellor, treasurer, justice, nor any of the king's counsel, nor clerk of the chancery, nor of any justice or other officer, nor of any of the king's house, clerk nor laymen, shall not receive any church nor advowson of a church, land or tenement in fee, by gift, nor by purchase, nor to farm nor by champerty, nor otherwise so long as the thing is pending before any of our officers; nor shall he take, nor receive a portion thereof." Then follows the penalty.

The statute of 28 Edw. 1, Ch. II, referring to the foregoing acts, says: . "That the king wills that no officer, nor any other (for to have part of the thing in plea,) shall take upon him the business that is in suit, nor none upon any such covenant shall give up his right to another.     *     *

*     *     But it may not be understood hereby that any person shall be prohibited to have counsel of pleaders or of learned men in the law for his fee, etc."

1st Rich. 2d, Ch. 9, makes any gift or feoffment of land or goods in dispute or under legal proceedings, void. And by 13 Edw. 1, Ch. 49, "No person of the king's house shall buy any title where the thing is in dispute." In 32 Hen. 8, Ch. 9, it is enacted, "That no one should buy or sell or obtain any pretended title to land unless the seller, his ancestors, or they by whom he claims have been in the possession of the same."

Now, are the foregoing enactments of a "general nature," "and not local to that kingdom," in the language of our statute? We most unhesitatingly assert that they are general, and not local. That at the time of their enactment in 1816, by the Legislature of this State, they were the law of the realm, and were in force over every inch of British territory, and were not in the slightest sense of the word local in nature. They were as general in their nature in England, as any act of Congress on the question of finance, revenue or customs, is general in the United States. Dwarris on Statutes, p. 384; Cooley's Black., Vol. 1, p. 86; Law & Eq. Rep., 1 Chan. Div. 573, in re Attor-

ney's and Solicitor's Act, Oct., 1873; *Scobey v. Ross*, 13 Ind. 117; *Sedgwick v. Stanton*, 4 Kernan 289; *Sweet v. Poor*, 11 Mass. 549; *Brinley v. Whiting*, 5 Pick. 348; *Arden v. Patterson*, 5 John. Ch. 44; *Byrd v. Odem*, 9 Ala. 755; *Sessions v. Reynolds*, 7 Miss. 130; *Wilson v. Nance*, 11 Hum. (Tenn.) 189; *McGoon v. Ankeny*, 11 Ill. 558; *Deshler v. Dodge*, 16 How. 622.

2. The mere fact that there is no stipulation in the contract, that the attorneys are to pay costs, does not take away the taint of champerty. This contract, it is true, is silent on that point, but it is evident that the suit has to be prosecuted at the cost of either the parties themselves or the attorneys. Now, there is no stipulation that the parties are to pay costs, and as to who are the responsible parties, is a matter of implication. We contend that the implication that this duty falls on the lawyer, is stronger than that it is the duty of the party to the suit, and we submit that so meager a defense should not be permitted to override the statute of our State and the high authority cited herein by appellants. *Scobey v. Ross*, 13 Ind. 117; *Holloway v. Lowe*, 9 Por. (Ala.) 488; *Evans v. Bell*, 6 Dana 479; *Thurston v. Percival*, 1 Pick. 415; *Lathrop v. Amherst Bank*, 9 Met. 489; *Merritt v. Lambert*, 10 Paige 352; *Wallis v. Loubat*, 2 Denio. 607; *Satterlee v. Frazer*, 2 Sandf. S. C. 141; *Sedgwick v. Stanton*, 14 N. Y. 289; *Ray v. Vattier*, 1 Ham. 132; *Weakly v. Hall*, 13 Ohio 167.

*Davis, Thoroughman & Warren* for respondents.

1. The overwhelming weight of authority is, that an essential element, if not the gist of the common law offense of champerty, is the agreement on the part of the champertor, "to carry on the party's suit at his own expense." Without this ingredient, we submit that no agreement of an attorney for the prosecution of a suit upon a contingent fee payable out of, or in proportion to the amount recovered, has been held in any well considered case in this country to be champertous. Blackstone's Comm. Vol. 4,

p. 135; Kent's Comm. Vol. 4, p. 447; Chitty on Contracts (5th Am. Ed.,) p. 675; 2 Chitty Crim. Law, p. 234; 2 Story's Eq. Jur., Sec. 1048 and notes, Secs. 1050, 1053; Bouvier's Law Dict. 218; *Boardman v. Thompson*, 25 Iowa 487; *McDonald v. R. R. Co.*, 29 Iowa 170; *Benedict v. Stuart*, 23 Barb. 421; *Ogden v. Des Arts*, 4 Duer 283; *Sussdorff v. Schmidt*, 55 N. Y. 319; *Hoyt v. Thompson*, 1 Selden 347; *Stearns v. Felker*, 28 Wis. 594; *Allard v. Lamerande*, 29 Wis. 502; *Ex parte Peit*, 2 Wall., Jr. 563; *Bayard v. McLane*, 3 Harr. 139, (Del.); *Major v. Gibson*, 1 Patt. & H. 48, (Va.); *Tapley v. Coffin*, 12 Gray 420, (Mass.); *Hoffman v. Vallejo*, 45 Cal. 564; *Martin v. Clarke*, 8 R. I. 389.

2. While we insist that the contract in question was not champertous, even at common law, we submit further that the entire doctrine is at variance with our State legislation and institutions. The form of government, state of society and organization of courts existing in England, and which gave rise to the acts of Parliament on this subject, were so materially different from those existing in this State, that those laws must be regarded as local, and not consistent with our institution. There, the fees of attorneys were fixed by law and taxed as costs, while here their compensation is left to the agreement of the parties, and in the absence of fraud or improper conduct, should be enforced like any other contract between man and man. *Bentnick v. Franklin*, 38 Tex. 458; *Richardson v. Rowland*, 40 Conn. 565; *Matthewson v. Fitch*, 22 Cal. 86; *Hoffman v. Vallejo*, 45 Cal. 564; *Ogden v. Des Arts*, 4 Duer 283; *Mahoney v. Bergin*, 41 Cal. 423; 1 Selden, 347.

HENRY, J.—"Champerty," says Hawkins, "is the unlawful maintenance of a suit in consideration of some bargain to have part of the thing in dispute, or some profit out of it." Sir Edward Cokes' definition is similar, and he says it was an offense at common law before any statutes were passed on the subject, and cites Bracton and Fleta to

support his position. Blackstone defines champerty to be
" a bargain with the plaintiff or defendant *campum partire,*
to divide the land or other matter sued for between them,
if they prevail at law; whereupon the champerter is to
carry on the party's suit at his own expense." Bouvier's
definition of the offense is the same as Blackstone's. Coo-
ley's Blackstone, fourth book, 435; Bouvier's Dictionary,
volume 1, 219. In a note to Cooley's Blackstone, Judge
Cooley observes that " the tendency of late has been to
confine these offenses (maintenance and champerty) within
bounds somewhat narrower than those indicated by the
older authorities," page 135. In *Lathrop v. Amherst Bank,*
9 Met. 490, the court said : " No doubt is entertained that
the earlier doctrine as to maintenance has been very essen-
tially modified." At the date of the American revolution
the English common law was in this country learned from
Blackstone. He was the standard authority, and in his
commentaries, more than in the works of any other English
author, did the lawyers of that generation study the Eng-
lish common law, and even now in the United States it is
a text book in all the law schools, and no effort to sup-
plant it has ever been successful. Kent's commentaries,
notwithstanding the high estimate placed upon the work
by the profession, is not regarded as a substitute for Black-
stone, and an American lawyer who has not studied Black-
stone's commentaries would be an exception among the
thousands which the profession numbers.

The common law doctrine of champerty, as explained
by Blackstone, became the law of the States of this Union
which adopted the common law, except in a few of the
States whose courts have held that the common law of
champerty was not applicable to their circumstances. In
*Richardson v. Rowland,* 40 Conn. 555, the learned judge who
delivered the opinion of the court observes that, " among
the States which discard the rule are Vermont, Delaware,
Tennessee and Iowa." We may add to this list California
and Texas. But even in Vermont, in *Danforth v. Streeter,*

28 Vt. 490; Redfield, J., delivering the opinion of the court, said: "There are probably other things coming more nearly to the idea of the common law definition of mainte-nance or champerty, such as carrying on suits for a share of the avails and thereby increasing litigation, and some others perhaps which the law will still regard as champer-tous and not countenance. But the present case does not seem to us of that character." Again he said: "The offense certainly does not exist in form in this State unless the com-mon law offense has been adopted as part of the law of this State, which I am reluctant to believe was the purpose of the Legislature unless with some qualifications." Un-less the meaning of this language of the court be that the common law offense of champerty has not been adopted as a part of the criminal code of Vermont and is not pun-ishable as a crime there, but that a contract is nevertheless void, which, by the common law is champertous, the above extracts are irreconcilable. We hold, however, that case to be an authority in support of the views we entertain of the case we are considering.

In the States of Kentucky, Alabama, Illinois, Indiana, Wisconsin, Ohio, Michigan, Massachusetts and Rhode Island, the common law offense of champerty is recognized whether to the extent of being punishable as a crime or only as invalidating contracts, which at common law were champertous, it is unnecessary in this case to inquire. Judge Story, in his commentaries, says: "It is deemed an offense against public justice and punishable accordingly both at the common law and by statute, as tending to keep alive strife and contention and to pervert the remedial pro-cess of the law into an engine of oppression." Story's Equity, § 1,048. In *Martin v. Clarke et al.*, 8 R. I. 402, the court said: "Whether we look therefore at the an-cient common law, to the English statutes upon the subject, or to our own legislation, the conclusion must be the same, that champerty is an offense against the law. Being such it must avoid every contract." In New York they have

champerty statutes which the courts of that State have evidently construed as covering the whole ground and repealing the common law. In *Thompson v. Reynolds*, recently decided by the Supreme Court of Illinois, but not yet reported, the following language was held by the court, Walker, C. J., delivering the opinion, a manuscript copy of which is before me: "It thus appears that champerty was an offense at the common law, and our General Assembly having adopted the common law of England as the rule of decision, so far as applicable to our condition, until modified or repealed, this must be regarded in this State as affecting all such contracts, and as being opposed to sound public policy." The agreement sought to be enforced there, was one by which it was stipulated that plaintiff should receive for his services a portion of what should be received in the suit, and bear the expense of its prosecution. It was held void, as a champertous contract.

We will not undertake to cite all the cases, but the weight of authority sustains the position that an act of the Legislature of a State, adopting the common law, with only the usual qualifications contained in such act, adopts the common law in regard to champerty. And generally the courts which have so determined have also declared that the law of champerty, as explained by Blackstone, and not as defined by Coke and the older authorities, is that which obtains. Blackstone, fourth book, 135; *Lathrop v. Amherst Bank*, 9 Met. 490; *Allard v. Lamerande*, 29 Wis. 502; *Martin v. Clarke et al.*, 8 R. I. 397; *Bayard v. McLane*, 3 Harrington 212; *Benedict v. Stuart*, 23 Barb. 421: *Ogden v. Des Arts*, 4 Duer 283. In *Bayard v. McLane*, *supra*, the court said, "this important ingredient of paying or contributing to the expenses of the suit, seems ever since to have been regarded as essential to constitute the offense of champerty, being introduced into all the elementary works of authority as a part of the definition." Counsel for appellants misconceive the case of *Allard v. Lamerande*, 29 Wis. 502. It was an action by plaintiff to recover from defen-

dant a tract of land.   Plaintiff had judgment and defendant appealed.   He claimed " that a champertous agreement between plaintiff and plaintiff's attorney relating to the compensation of the latter was proved on the trial, and that the court erred in denying the motion of the defendant to dismiss the action because of such agreement."   The court held that the law against champerty obtained in that State. Lyon, J., said :   " In all the agreements which have been held by this court to be champertous, there were express covenants or stipulations that the champerters should pay the expenses of the litigation."   Again :   " Upon the whole we see no good reason founded on principles, either of justice, public policy, or professional propriety, for holding that the agreement between the plaintiff and his attorney is champertous, although upon the authorities it would be otherwise had the attorney agreed to pay the expense of the litigation."

In the case of *Crow v. Harmon*, 25 Mo. 471, the following was the agreement sued on :   " I promise to pay G. W. Crow one hundred dollars if the M. T. Lewis county-road is not opened and kept open along the creek where it is now located, or if said Crow should make null the present proceedings of the court and commissioners, as already had and done by them.   I also agree that if said road is opened and kept open that said Crow shall have all the damages that may ever be assessed me for the same." Messrs. Foster, Vories and Loan, for defendant, contended that the agreement was champertous and void.   Messrs. Hall and Gardenhire insisted that it was not champertous because there was no stipulation that Crow was to "supply money to carry on any suit on condition of sharing in any land or other property gained by it."   The lawyers on both sides were of high standing at the bar, and seem to have assumed that the common law of champerty was the law in this State.   Scott, J., delivered the opinion of the court and observed :   " As to the objection that the contract was champertous, it may be answered that there is nothing on

the face of it showing that it is obnoxious to such an imputation, nor was there any evidence in support of it." This was all that was said in the opinion on that subject. We think the clear inference from the language of the court is that it regarded the common law of champerty as in force in this State. That case is also an authority for the position that to render a contract champertous, the party stipulating for a portion of what may be recovered as a compensation for his services must likewise agree to bear all or a portion of the expense of the litigation. The contract was clearly champertous according to the older English authors, for it was stipulated that, if the road was established, Crow was to have all the damages that might be assessed to Harmon on account of the condemnation of his land for that purpose. This is the only case we have been able to find in the Missouri Reports, and we are satisfied that it is the only one that has ever been before this court, until now, involving this question.

Section 1, page 886, 2d volume Wagner's Statutes, is as follows: " The common law of England and all statutes and acts of Parliament made prior to the fourth year of the reign of James I., and which are of a general nature, not local to that kingdom, which common law and statutes are not repugnant to or inconsistent with the constitution of the United States, the constitution of this State, or the statute laws in force for the time being, shall be the rule of action and decision in this State, any law, custom or usage to the contrary notwithstanding." Although we adopted the common law without the qualification that it be applicable to our condition, the courts would be at liberty to declare that any portion of the common law inapplicable to our condition and circumstances, does not obtain here. But there is nothing in the law of champerty as expounded by Blackstone and Bouvier, and the American courts in the adjudicated cases which we have cited, that is not applicable to our condition. The race of intermeddlers and busy-bodies is not extinct. It was never confined

to Great Britain, and the little band of refugees who landed from the Mayflower on the coast of New England were not entirely free from the vice of intermeddling in the concerns of other people. It is as prevalent a vice in the United States as it ever was in England, and we do not see but that a law restraining intermeddlers from stirring up strife and litigation betwixt their neighbors is wholesome and necessary, even in Missouri.. A man having a doubtful claim to property in the possession of another, who would hesitate to incur the expense of testing its validity, will readily agree that one who will bear the burden of the contest, and take part of the recovery for his pay, may institute the suit in his name. Such contracts are champertous and should be so held on principle everywhere.

The contract under consideration, however, is not champertous, because while the attorneys agreed to receive as a compensation for their services, as such, a portion of the property in controversy, they did not bind themselves to pay any portion of the expenses of the litigation.

We do not agree with the court of appeals that "the whole doctrine of champerty and maintenance is a relic of a state of things long since passed away," and we affirm its judgment, not because champertous contracts are not void in this State, but because the contract in question is not champertous. All concur.

AFFIRMED.