L. AULTMAN *et al.* v. F. A. WADDLE.

1. CORPORATION—*Liability of Stockholders.* Stockholders who organize themselves as a corporation, transact business, and hold themselves out to the world as such corporation, cannot, when proceeded against by creditors, set up as a defense that the preliminary steps of the organization were irregular; nor can they deny their liability as stockholders therein.

2. AGREEMENT, *not Champertous.* Certain judgment creditors assigned judgments which they had obtained against a party to an attorney, and contemporaneously with the assignment it was agreed that the attorney should proceed to collect the judgments in his own name, and should pay to the creditors fifty per cent. of the amount realized, they to assume the burden of the costs. *Held,* That as the agreement did not relieve the creditors from the payment of the costs of the proceedings, it was not champertous.

*Error from Franklin District Court.*

ACTION by *F. A. Waddle* to enforce the individual liability of the defendants as stockholders of the Pomona Creamery Company. At the April term, 1887, the trial was had without a jury, and the court at the request of the parties made the following findings of fact and conclusions of law:

"1. On October 24, 1883, the several defendants in this action, together with several other citizens of this county, signed a written contract or proposition with John W. Hall & Co., whereby said Hall & Co. proposed to erect and put in operation a creamery, at Pomona, of a certain capacity, and said subscribers agreed to pay therefor the sums set opposite their names; and when $5,800 should be subscribed, the creamery to be erected in 120 days thereafter, and the subscribers then to incorporate under the laws of Kansas, fixing the capital stock at $6,800, to be divided into 136 shares of $50 each, Hall & Co. to have $5,800 in money for the creamery, and 20 shares of stock therein, to be issued to them for superintending the work. Said writing further provided that 'in the articles of incorporation, and in the by-laws thereof, no assessment shall be made upon the stockholders for the indebtedness of the same except to pay Hall & Co. as above specified, neither shall the private property of said stockholders be liable for such subsequent indebtedness.' It was further provided

in said writing, 'that after said organization is completed, and said amount paid to Hall & Co., said corporation shall issue stock to each of the above-mentioned subscribers to the amount of his subscription hereto annexed; also issue 20 shares of stock to said Hall & Co., as full payment for superintending the manufacturing and marketing of the butter above mentioned.' The defendants subscribed said paper as follows:

| NAME. | P. O. ADDRESS. | AM'T SUBSC. |
|---|---|---|
| L. Aultman | Ottawa | $100 |
| J. F. Patton | Pomona | 100 |
| E. A. Rice | Ransomville | 300 |
| J. H. Scoville | Pomona | 100 |
| A. H. Sellers | Pomona | 100 |
| Philip Bledsoe | Pomona | 100 |
| Morg. Wickham | Pomona | 200 |
| J. J. Whetstone | Pomona | 200 |
| J. H. Whetstone | (Per orders) | 750 |

"The paper was similarly subscribed by several others, who are not made parties.

"2. In pursuance of said contract and proposition, Jno. W. Hall & Co. erected and put in operation said creamery about March 1, 1884, and about the same time said subscriptions were collected to the amount of $5,800, and paid over to Hall & Co., except $250, which was never collected, being part of the $750 subscribed by J. H. Whetstone, 'per orders,' which is hereafter again referred to,

"3. On January 1, 1884, ten of said subscribers executed and acknowledged a charter for said 'Pomona Creamery Company,' and caused the same to be filed in the office of the secretary of state as provided by law, whereby they undertook to and did become incorporated by said name under the laws of Kansas, as contemplated in said contract or proposition referred to in the first finding. A copy of said charter, marked 'A', is attached to the answer herein.

"4. After the filing of said charter, certificates of stock were duly issued to said defendants and other subscribers thereto, as provided in said original contract for the amounts so subscribed, except said J. H. Whetstone, which was duly paid in full by said defendants, and thereupon they became and were stockholders therein, holding paid-up stock for the amount specified in their subscriptions as stated in the first finding, and have ever since continued to and still do hold said stock.

"5. The subscription of J. H. Whetstone for $750 was made by him and understood by the other subscribers to be for other parties, and afterward $500 of said amount was taken by and stock therefor issued to C. W. and O. L. Parkinson; but the balance thereof, to wit, $250, was never taken by anyone, and never issued.

"6. Regular books were kept, showing the transactions of said corporation and its board of directors, and the names of its stockholders, and amounts of stock held. The corporation engaged in the business named in its charter and proposed in said original agreement, and continued therein from the spring of 1884 down to October 1, 1885, when it suspended business, and since that time has failed to resume its usual and ordinary business, and had wholly suspended business for more than one year prior to the commencement of this action.

"7. One week prior to June 1, 1885, the secretary of said corporation, by order of its president, and as provided by the by-laws, gave to each stockholder therein, including the defendants, a notice of a special meeting to be held at the creamery office in Pomona on June 1, 1885, for the purpose of changing the articles of incorporation. This notice was given by mail to each stockholder, by posting in three public places in Franklin county, and by advertisement in the *Pomona Enterprise*, a newspaper published at Pomona, and was in conformity to a by-law of the corporation providing for special meetings and the notice therefor. Stockholders were present and acting at such meeting representing 79 shares of the capital stock. None of these defendants were present at such meeting. Prior to the call for this meeting, the 20 shares issued to Hall & Co. had been surrendered to the corporation and canceled, and the certificates burned. This was done in pursuance to a resolution of the stockholders at a stockholders' meeting authorizing any holder of stock to so surrender the same and have it canceled. The stock outstanding, excluding said Hall stock, on June 1, 1885, was $5,350.

"8. At said special meeting of June 1, 1885, it was voted to adopt the second or amended charter which had been executed May 18, 1885, by six of the original corporators, and thereupon it was duly filed with the secretary of state. A copy of this amended charter is attached to the answer herein, marked 'B.' This was adopted in pursuance to the advice of counsel for the reason specified in the preamble thereto, and was intended as an amended charter for the same corporation, and was not intended to be the charter of a new cor-

poration. The corporation continued to transact the same business with the same property, using the same books and records under the direction of the same officers, and with the same objects and purposes, and pursuing the same methods as before. On the day such amended charter was adopted it was voted to execute a mortgage upon the creamery to certain stockholders to secure them for liabilities assumed as indorsers of the corporation paper, which mortgage was accordingly executed and afterward foreclosed in this court.

"9. The defendants Patton, Scoville, Wickham and J. J. Whetstone traded with said corporation, delivered milk at the creamery, and accepted checks therefor drawn by its treasurer after the change in said charter had been made, but none of the defendants had any actual knowledge of said change after it had been made until this suit was brought.

"10. In January, 1886, 'the several judgment creditors mentioned in the petition duly recovered a judgment before a justice of the peace of this county for the several sums, with costs, specified in the petition, whereof abstracts were duly filed and judgments docketed thereon in this court as provided by law, and as alleged in the petition. Afterward, and on August 16, 1886, said judgments were by the judgment creditors therein severally duly assigned in writing, absolute in form, to the plaintiff. Contemporaneous with such written assignments, it was agreed between the plaintiff (who is an attorney at law of this court) that he should proceed to collect said judgments in his own name, and when collected pay to said several judgment creditors 50 per cent. of the amount collected on each judgment; they, the judgment creditors, then advancing to plaintiff $30 as indemnity against costs. All the claims upon which said judgments were rendered accrued after said amended charter was adopted and filed.

"11. There is now due to the plaintiff on the several judgments, so assigned to him, the sum of $477.25, debt, and $329.95, costs accrued upon said judgments, amounting altogether to the sum of $807.20.

"12. None of the defendants have paid into the corporation, or for its use, anything more than the amount of their said stock subscriptions. Said J. J. Whetstone has, however, purchased several open accounts against the corporation, and holds the same by assignment, amounting to the sum of $110. He has also since the commencement of this action had assigned to him a judgment against the corporation for $200, rendered in the foreclosure suit upon the mortgage referred to

in the eighth finding. The corporation also owes the defend-
ants, Scoville $15, and Morg. Wickham $24, balance due for
milk furnished by them since June 1, 1885."

As its conclusions of law upon the foregoing facts, the court
finds that —

"1. The plaintiff may maintain this action, as he has under-
taken to do, and the defense of champerty cannot be sustained.

"2. The corporation as organized under said charter 'A' is
the same corporation afterward continuing business under char-
ter 'B,' the last-named charter being an amendment merely of
the former, and the liability of the stockholders remains the
same.

"3. By the provisions of § 40 of the act concerning pri-
vate corporations as amended in 1883, the said corporation
must be deemed dissolved at the commencement of this action,
for the purpose of enabling creditors to enforce the individual
liability of stockholders therein.

"4. The said defendants named below are liable herein to
an amount equal to the capital stock held by them respectively,
to wit: L. Aultman to the amount of $100, J. F. Patton to
the amount of $100, E. A. Rice to the amount of $300, J. H.
Scoville to the amount of $100, A. H. Sellers to the amount
of $100, P. Bledsoe to the amount of $100, Morg. Wickham
to the amount of $200, J. J. Whetstone to the amount of
$200, and the defendant J. H. Whetstone is not liable.

"5. The plaintiff is entitled to judgment for said sum of
$807.20 due upon said judgments. The several defendants
to be released upon paying the amount of their respective in-
dividual liability, and when sufficient is paid to satisfy the
amount so due the plaintiff, with interest from this date, and
costs of this action, the judgment will be released."

Judgment was rendered against the defendant stockholders
in accordance with the conclusions of law. The plaintiff and
the defendants both complain of the judgment rendered, and
bring the case here for review.

*H. P. Welsh,* for plaintiffs in error.

*F. A. Waddle,* defendant in error, for himself.

The opinion of the court was delivered by

JOHNSTON, J.: The plaintiffs in error present two questions
— one, that the findings of the court fail to support its judg-

ment; and the other, that the contract between the creditors of the Pomona creamery company and F. A. Waddle is champertous.

The only criticism made upon the findings is where the court states that the second charter filed was intended as an amended one, and not to be the charter of a new corporation. Two charters were filed by the company — one when it was organized, in January, 1884, and one in June, 1885. In the first charter there was a provision that the individual property of the stockholders should not be liable for corporate debts, and that the indebtedness of the corporation should not at any time exceed one-third of the capital stock of the company. The judgments which form the basis of this proceeding were rendered after the second charter was filed; and it is contended by the stockholders that they could not be held individually liable under the charter first filed, and that the making and filing of the second charter was the formation of a new company in which they held no stock, and hence they were not liable for the judgments sought to be enforced. The court, however, finds from the evidence that the second charter was merely intended as an amendment of the first, and in the absence of the evidence, which was not brought here, this finding is conclusive in this court. Even the preamble to the amended charter clearly indicates that it was made to cure irregularities or defects in the first. There was no change of name nor of purpose, and the company continued to carry on its business with the same property, using the same books and records, under the directions of the same officers, as before. The stockholders were notified in the manner prescribed by the by-laws of the meeting at which the attempted amendment of the charter was made, and most of the plaintiffs in error continued to do business with the corporation as such after that time. The fact that the law did not then permit the amendment of charters will not relieve the stockholders from liability, since the court has found that the action taken was intended as an amendment and as a continuation of the corporation first organized in which they held stock; nor can

they be relieved from liability by virtue of the exceptions included in the first charter. That charter contained all the essential provisions, and more also. It set forth the name of the corporation, the purpose for which it was formed, the place where its business should be transacted, the number of its directors and the names of those first appointed, and the amount of capital stock and the shares into which it was divided. Included in the document were by-laws which had no place there, and among them a provision that the stockholders shall not be individually liable for the debts of the corporation. This provision is in direct conflict with the constitution and statutes of the state, and is nugatory. But the placing of this void provision in the charter does not necessarily invalidate the organization. Further than that, these stockholders are not in a position to impeach the irregularity of the organization of the corporation, or to deny their liability as stockholders therein. Having organized themselves as a corporation, transacted business and held themselves

1. Corporation —liability of stockholders.

out to the world as such corporation, they cannot when proceeded against by creditors set up as a defense that the preliminary steps in the organization were irregular. (Thompson's Liability of Stockholders, § 407.)

The defense of champerty is raised on an agreement contemporaneously made with the assignments of the judgments. The finding of fact respecting the matter is that it was agreed between the plaintiff, who is an attorney at law, and the judgment creditors "that he should proceed to collect said judgments in his own name, and when collected to pay to said several judgment creditors fifty per cent. of the amount collected on each judgment; they, the judgment creditors, then advancing to plaintiff $30 as indemnity against costs." There is a great diversity of opinion as to what constitutes champerty. A few of the courts hold to the ancient doctrine of champerty with considerable strictness; many of them have greatly relaxed the common-law rules, making them conform more closely to the present condition of society; while some have repudiated the doctrine entirely. In this state the doctrine has been recog-

nized, and it has been held that the defense of champerty may be maintained. (*A. T. & S. F. Rld. Co. v. Johnson*, 29 Kas. 218.) In that case the only consideration for the prosecution of the suit was a share of the judgment to be recovered, and the attorneys were to commence and carry it to an end at their *own cost and expenses*. The mere agreement for a contingent fee does not fall within any of the rules of champerty, nor is it generally regarded to be unlawful for an attorney to carry on a suit for another for a percentage or share of the thing to be recovered, unless he assumes the risks of the litigation by relieving or indemnifying his client from all costs and expenses of the same. Sir William Blackstone says that champerty is " a bargain with a plaintiff or defendant *campum partire* to divide the land or other matter sued for between them, if they prevail at law; whereupon the champertor is to carry on the party's suit at his own expense." (4 Bl. Com. 135.) The same view is taken by Mr. Chitty, who makes the carrying on of the suit by the champertee at his own expense an essential element. (Chitty on Contracts, 745.) This interpretation, which we adopt, is now generally accepted, and is sustained by the weight of authority. (*Park Comm'rs v. Coleman*, 108 Ill. 591; *Walsh v. Shumway*, 65 id. 471; *Duke v. Harper*, 66 Mo. 51; *Moody v. Harper*, 38 Miss. 601; *Weakly v. Hall*, 13 Ohio, 167; *Key v. Vattier*, 1 id. 142; *Moses v. Bagley*, 55 Ga. 283; *Allard v. Lamirande*, 29 Wis. 502; *Martin v. Clarke*, 8 R. I. 389; *Wright v. Tebbitts*, 91 U. S. 252; *Knadler. v. Sharp*, 36 Iowa, 232; *Courtright v. Burnes*, 13 Fed. Rep. 317, and note; *Phillips v. South Park Comm'rs*, 10 N. E. Rep. 230; *Jewell v. Neidy*, 61 Iowa, 299.) In the present case there is no showing that the attorney was to enforce the collection of the judgments at his own cost or expense. As the finding stands it indicates that the judgment creditors were not to be relieved from the costs, as it is stated that they advanced to the attorney $30 as indemnity against costs. It does not appear that the costs of the proceeding to enforce the collection of the judgments exceeded the sum advanced, and as the plaintiffs in error presented the defense of champerty it devolved on them to show

2. Agreement, not champertous.

the champertous elements of the agreement. From the record in the case we are bound to assume that the assignors of the judgments were to bear the cost of the proceedings for their enforcement; and it follows that the agreement made was not champertous.

We may further remark that the validity of the judgments is not questioned; and certainly it is not unlawful to assign or enforce them. The agreement did not bring on useless litigation, or make unnecessary costs. The claims of the creditors had already been placed in judgments, and the costs of litigating the claims had accrued. The effect of assigning all the judgments to one person and enforcing the same in a single proceeding tended to reduce the costs, and was not detrimental to the interests of the plaintiffs in error.

We find no error in the record, and will therefore affirm the judgment.

All the Justices concurring.