DOCKERY, Respondent, vs. McLELLAN, imp., Appellant.

*May 2 — May 22, 1896.*

*Attorney and client: Contract as to compensation construed: Contingent
fee: Champerty: Fairness of contract: Burden of proof.*

G. and M. were interested as partners in paving contracts, but they
stood in the name of G. and he had pledged them to a bank. M.,
being unable to raise his agreed share of the money necessary to
prosecute the work, and being likely therefore to lose his interest
in the contracts, made a written agreement with plaintiff, an at-
torney, by which, after reciting that he desired to protect his in-
terest in said partnership and to arrange the same so that it might
be used as collateral for loans to continue the paving, and that he
desired the services of plaintiff to protect said interest and secure
the loans, he assigned to plaintiff, in consideration of such serv-
ices, one third of his share of all profits arising from said paving;
and plaintiff therein agreed " to use his best efforts to protect the
interest of [M.] in said paving contracts and to secure necessary
loans to continue said paving; " and it was provided that if plaint-
iff should fail to secure for M. his interest in the partnership he
should receive no compensation for his services. A separate as-
signment to plaintiff of a one-third interest in M.'s share of the
profits arising from the paving was executed at the same time.
*Held:*

(1) The agreement between M. and the plaintiff, and the assign-
ment to the latter, were not merely security for reasonable com-
pensation, but entitled plaintiff, if successful in securing M.'s in-
terest, to one third of the latter's share of the profits.

(2) The agreement was not that plaintiff should furnish the nec-
essary money, but merely that he should use his best efforts to
secure the loans.

(3) The agreement and assignment were not champertous, al-
though for a contingent fee consisting of a certain share of the
amount involved, since plaintiff did not undertake to pay any ex-
penses of litigation.

(4) There having been no previous relations between M. and the
plaintiff, they dealt with each other at arm's length in making the
agreement, and plaintiff is not bound to show that it was fair,
just, and reasonable, as a condition of enforcing it.

(5) Even if the relations between plaintiff and M. were strictly
those of attorney and client and of a fiduciary character when

the agreement was made, yet, there having been no fraud or undue influence, and the agreement having been made by M. willingly, understandingly, and for a good and valuable consideration, it may be enforced.

APPEAL from a judgment of the circuit court for Ashland county: JOHN GOODLAND, Judge. *Affirmed.*

This action was brought to enforce a claim on the part of the plaintiff for one third of a one-half share of the defendant *McLellan* in the profits under certain contracts between the defendant A. J. Grant and the city of Ashland for paving Third street, and in the profits of which said Grant and *McLellan* were equally interested. The contract with the city had been assigned in 1893 by Grant to the Security Savings Bank of Ashland, as security for advances made to enable the parties to perform their contract.

The complaint alleged, in substance, that Grant had appropriated to his own use a balance of $1,300 of profits already earned, and refused to replace it or assign to *McLellan* his interest in the paving contracts, and refused to acknowledge his right to an equal share of the profits under them; that *McLellan*, fearing that he would lose his just profits under the contracts, applied to the plaintiff, as an attorney, to protect his interests under them, and to procure his aid to secure the necessary credit and advances to perform the contract on his part; that accordingly the plaintiff and *McLellan* entered into two written contracts, May 27, 1893, by the first of which, after reciting the interests of Grant and *McLellan* in the contracts, and that the latter desired to protect his interest therein and to so arrange that it might be used for security for loans to continue such paving, and desired the services of the plaintiff to protect his said interests and to secure such loans, it was agreed, in consideration of one dollar and of such services, that the said *McLellan* thereby sold, assigned, and set over to the plaintiff one third of all the profits which might belong to him from said paving,

and the plaintiff agreed "to use his best efforts to protect the interest of said *McLellan* in said contracts, and to secure the necessary loans to continue said paving," and if he fails "to secure for *McLellan* his interest in said partnership he shall receive no compensation for his services;" that such contract was made a part of said other contract of even date therewith, which was an assignment from the defendant *McLellan* to the plaintiff, in consideration of one dollar and other valuable consideration, of "one third interest in and to all the profits which now and hereafter may belong to said *McLellan*, arising from such paving contracts, and which work is now being carried on by said *McLellan* and one Allen Grant on equal shares." The plaintiff alleged performance of his contract; that he secured to defendant *McLellan* his just rights and recognition under the contract, procured for him the necessary advances for completing the work, and by his services *McLellan* was enabled to carry on and complete his share of the contract, whereby the plaintiff became entitled to one third of the net profits resulting to said *McLellan* therefrom; that the Security Savings Bank was entitled, out of the proceeds of said contract, to retain the amount of its advances, and was to pay over the balance to said Grant and *McLellan*, or their assigns; that Grant and *McLellan* had had a pretended accounting as to said matters, without the plaintiff's knowledge, and large amounts had been improperly charged to the expense of said work, in fraud of the plaintiff's rights. Judgment was demanded for an accounting between said Grant and *McLellan* and the Security Savings Bank, and of the plaintiff's interest in said profits, and that a receiver be appointed and injunction granted, and for general relief.

The defendant *McLellan* alleged in answer that he applied to the plaintiff, an attorney at law, to ascertain how he might be able to raise money to carry on the work, and retained and counseled with him; that the plaintiff repre-

Dockery vs. McLellan.

sented and agreed that he could and would procure the
necessary loans and advances for that purpose for one third
of the profits coming to the defendant, if, on investigation
of his books, contracts, and accounts, they were found as he
had stated; that after such investigation the contracts men-
tioned were executed, the plaintiff representing that this
was necessary in order to enable the plaintiff to secure such
advances, but without any other consideration; that there-
after, when he needed such funds to carry on the work, the
plaintiff failed and refused to furnish the same, and for such
failure he notified the plaintiff that he had rescinded such
contract, and he discharged the plaintiff and was compelled
to and did obtain the funds elsewhere to carry on the work,
without the plaintiff's aid or assistance; that said Grant
and defendant prevailed upon the city to advance to them
the retained percentage on their contracts; that the plaintiff
appeared before the council and favored a resolution, and
except this, and advice and consultation with him as attor-
ney, he performed no service of any kind for the defendant;
that such services were not worth more than $100; that he
would not have entered into the contract with the plaintiff
had he not relied on and believed his statements and repre-
sentations that he could so procure the necessary money to
continue the said work, and that the said representations
and agreements were the sole inducement and consideration
for making said contract and assignment; that the defend-
ant and Grant had fully performed their contract with the
city, and made proper adjustment of their business affairs,
and the bonds issued by the city were held, pending the
action, by the order of the court; that the defendant's share
of the net profits under the contracts was $10,914.35.

The court found that the allegations of the plaintiff's com-
plaint were true, and, among other things, that May 27,
1893, the defendant *McLellan*, for good and valuable con-
sideration, and without fraud on the part of the plaintiff,

Dockery vs. McLellan.

entered into the said contracts with the plaintiff, and the plaintiff performed all the conditions and requirements thereof on his part to be performed; that, of the defendant's share of said net profits, there was in court and on deposit in a certain bank, $4,401.90, out of which the plaintiff was entitled to receive the sum of $3,633.96, being one third of the defendant *McLellan's* share of said net profits, for which the plaintiff was entitled to judgment, with costs, etc.; and judgment was entered accordingly, from which the defendant *McLellan* appealed.

At the trial objection was made that the contracts sued on were, on their face, void for uncertainty and champertous, and that the complaint did not state facts sufficient to constitute a cause of action either at law or in equity, and that the plaintiff's remedy was by legal action; but these objections were overruled. The evidence was quite lengthy, and such reference to it as may be necessary will be found in the opinion.

For the appellant there was a brief by *Sanborn, Dufur & O'Keefe*, of counsel, and oral argument by *A. W. Sanborn*. They contended, *inter alia*, that this being a contract between attorney and client the burden is upon the plaintiff to satisfy the court that it is fair, just, and reasonable. *Fisher v. Bishop*, 108 N. Y. 25; *Ford v. Harrington*, 16 id. 285; *Felton v. Le Breton*, 92 Cal. 457; *Rolfe v. Rich*, 149 Ill. 436; *Tragman v. Littlefield*, 18 N. Y. Supp. 583; *Petrie v. Williams*, 68 Hun, 589; *In re Cohen*, 84 id. 586; *McMahan v. Smith*, 6 Heisk. 167; Weeks, Attorneys, §§ 268, 276; *Bingham v. Salene*, 15 Oreg. 208; *Whitehead v. Kennedy*, 69 N. Y. 462; Laws of 1891, ch. 204; *Elmore v. Johnson*, 143 Ill. 513; *Rogers v. R. E. Lee M. Co.* 9 Fed. Rep. 721. In a case of a contract of purchase and sale between an attorney and client or principal and agent, or of an agreement giving benefits and advantages to the agent or attorney, proof of actual fraud is not necessary in order to set aside the contract;

the burden of establishing its perfect *fairness, adequacy, and equity* is upon the agent or attorney, and, in the absence of such proof, courts of equity treat the case as one of constructive fraud. *Waters v. Thorn,* 22 Beav. 547; *Parkist v. Alexander,* 1 Johns. Ch. 394; *Condit v. Blackwell,* 22 N. J. Eq. 481; *Banks v. Judah,* 8 Conn. 146; *New York C. Ins. Co. v. Nat. P. Ins. Co.* 14 N. Y. 91; *Judah v. Trustees,* 23 Ind. 272; *Huguenin v. Baseley,* 14 Ves. 273; *Lowther v. Lowther,* 13 id. 102; *Lord Selsey v. Rhoades,* 2 Sim. & S. 41; *Fox v. Mackreth,* 2 Brown, Ch. 400; *Gibson v. Jeyes,* 6 Ves. 278; 1 Story, Eq. Jur. § 311; Pomeroy, Eq. Jur. § 960; *Allard v. Lamirande,* 29 Wis. 502. It would be just, fair, and reasonable to construe this assignment from the defendant to the plaintiff as security for plaintiff's reasonable charges. *Mason v. Ring,* 3 Abb. App. Dec. 210; *Lecatt v. Sallee,* 3 Port. 115, 29 Am. Dec. 249; *Lewis v. J. A.* 4 Edw. Ch. 599; *Berrien v. McLane,* 1 Hoffman, Ch. 421; *Mott v. Harrington,* 12 Vt. 199; *Wood v. Downes,* 18 Ves. 120; *Hylton v. Hylton,* 2 Ves. Sr. 547; *Brown v. Bulkley,* 14 N. J. Eq. 451; *Newman v. Davenport,* 9 Baxter, 538; *Finlay v. Leary,* 87 Hun, 8; *In re Cohen,* 84 id. 586; *McMahan v. Smith,* 6 Heisk. 167.

For the respondent there was a brief signed by *Tomkins & Merrill,* attorneys, and *Dockery & Kingston,* of counsel, and oral argument by *E. J. Dockery.*

PINNEY, J. 1. The contract and contemporaneous assignment are in clear and explicit terms. At the time they were executed, Grant, in whose name the contracts with the city stood, had already pledged them to the Security Savings Bank as collateral for a large sum obtained and used in carrying on the work of paving during the previous year, and in his own lumbering operations as well. *McLellan* was unable to raise his half of the necessary money in order to carry on the paving to completion. For that reason,

Grant was likely to exclude him from the benefits of what were believed to be very profitable contracts, in which both parties were equally interested; and the bank claimed the right, as against *McLellan*, to hold the contracts, and the advantages they secured, for previous advances. The evidence abundantly shows that what *McLellan* most needed was money in order to carry out the contracts. He had no litigation pending, so far as appears, with any one, nor does any seem to have been then contemplated. The contract does not appear to have been the subject of much negotiation. The defendant voluntarily made the offer, which the plaintiff accepted. The compensation was not only contingent, but, if profits were obtained, uncertain in amount; and if the plaintiff failed to secure to *McLellan* his interest in the contracts with the city, he was to receive no compensation whatever, and he could have, in any event, no more than one third of *McLellan's* share in the profits. It was not a contract for security, in any proper sense of the word. It was for one third of *McLellan's* share of the profits, or it was for nothing at all. The contract and assignment contain nothing that would authorize the court to construe the transaction as a mere security for a reasonable compensation.

2. It was insisted in defense that the agreement was that the plaintiff was to furnish the necessary money to *McLellan*, and not merely to render his services in procuring the necessary loans, and that the plaintiff so represented, promised, and agreed, and that the contracts were signed by *McLellan* upon the faith of such representations and promises, and that they constituted the real consideration for the contract and assignment. But this defense wholly fails, for the contract shows, as stated, an entirely different agreement; and there is no proof of fraud or any unfair practice in the execution of these instruments, and there has been no application to reform or correct them on the ground of mutual

Dockery vs. McLellan.

mistake. The recital of the contract is that *McLellan* " desires to protect his interest in said partnership [of Grant & *McLellan*], and so *arrange* his interest in said partnership that the same may be *used as collateral for loans* to continue such paving, and desires the *services* of the party of the second part [*Dockery*] to protect his interest therein *and secure loans* to prosecute such work." The agreement is that the plaintiff was " to use *his best efforts* to protect the interest of the party of the first part, *McLellan*, in said paving contracts and to secure the necessary loans to continue said paving; and, if he fails to secure for the party of the first part his interest in said partnership, he shall receive no compensation for his services." If he succeeded, for his services he was to have " one third of all profits which may belong to the said party of the first part, from said paving." The language of the contract is too clear and explicit to admit of any difficulty or doubt.

3. The contract and assignment were not champertous. An attorney may contract to render services in the conduct of a suit for a fee contingent upon his success therein, and such fee may be a stipulated percentage or share of the amount that may be recovered, where he does not undertake to pay any part of the expenses of the litigation. *Allard v. Lamirande*, 29 Wis. 502; *Kelly v. Kelly*, 86 Wis. 170, 172; *Taylor v. Bemiss*, 110 U. S. 42, 45; *Fowler v. Callan*, 102 N. Y. 395, 397. Here the plaintiff was not to pay any expense in accomplishing the desired object.

4. The parties had met on but two or three occasions before, and there had not been any previous dealings or business relations between them. The defendant *McLellan* appears to have been a man of experience in business affairs, and he had been for many years a contractor in very large undertakings. There is nothing to show that he was deceived or overreached, or that he did not fully understand and appreciate the business in hand, in all its details. He

understood that if he could obtain the means required on his part to carry out the paving contracts, and had some one to look after and protect his interest in them, he would receive a very large sum as his share of the profits. Failing in this, it was probable his interest would be lost. It was perhaps a matter of prudence, under all the circumstances, for him to make the contract he did. The parties stood to each other at arm's end, and, there being neither fraud nor undue influence, it was competent for the plaintiff to make the contract; and the transaction having succeeded, and resulted so largely to defendant's pecuniary advantage, instead of an entire loss, we do not see upon what ground he can resist the plaintiff's claim for the stipulated one-third of his share of the profits.

It is said that this was a contract between attorney and client, and that the burden is on the plaintiff to satisfy the court that it was fair, just, and reasonable. It is not entirely clear that the services which the plaintiff was to render fall strictly within the line of professional duty. The plaintiff appears to have acted in the capacity of a negotiator or promoter, rather than as an attorney stipulating for compensation contingent upon success. The plaintiff had not previously had charge or control of any of the defendant's property, business, or affairs. There was no confidential relation existing between the parties at the time, and the technical relation of attorney and client did not then exist; and the circumstance that litigation might ensue, in order to protect the interests of *McLellan* in the partnership or paving contracts, will not materially alter the rights of the parties. Before an attorney undertakes the business of his client, he may contract with reference to his services and the amount of his compensation, and even, as the cases cited show, for a contingent fee or reward, because no confidential relation then exists and the parties deal with each other at arm's length; and the same is true after the relation of at-

torney and client has been dissolved. 1 Story, Eq. Jur. (13th ed.), §§ 310, 313; *Elmore v. Johnson*, 143 Ill. 525; *Edwards v. Meyrick*, 2 Hare, 60, 68. An attorney, as such, is not under a general disability to make contracts. As was said by Lord ELDON in *Gibson v. Jeyes*, 6 Ves. 276: "It has been truly said, an attorney is not incapable of contracting with his client. He may for a horse, an estate, etc. A trustee also may deal with his *cestui que trust;* but the relation must be in some way dissolved, or, if not, the parties must be put so much at arm's length that they agree to take the characters of purchaser and vendor, and you must examine whether all the duties of those characters have been performed." Evidently, when the parties are standing upon an equal footing, they have a right to determine, each for himself, upon what terms the relation shall be formed, and such we understand to be the transaction in the present case; and, as no confidence can be said to have been first extended, it is difficult to say upon what ground the plaintiff is under the necessity of vindicating the fairness and reasonableness of the contract, as a condition of enforcing it.

In *Taylor v. Bemiss*, 110 U. S. 42, 45, a contract with an attorney to prosecute a claim before a government commission for a contingent fee was held not void, and that under the circumstances, the parties having agreed upon fifty per cent.of the claim as a contingent fee, the court would not assume that it was extortionate. The court, adverting to considerations justifying such contracts, adds: " This, however, does not remove the suspicion which naturally attaches to such contracts; and where it can be shown that they are obtained from the suitor by any undue influence of the attorney over the client, or that the compensation is clearly excessive, so as to amount to extortion, the court will, in a proper case, protect the party aggrieved."

The question as to the necessity of proof to vindicate the fairness of transactions between attorney and client gener-

ally arises where the attorney, during his relation as such, purchases property of the client, and stipulates for advantages or benefits from him, and where his personal interest is brought in conflict with his professional duty. In the case of such transactions, in order to sustain them, the law is well settled that the attorney must show affirmatively either that he paid an adequate consideration, or that a gratuity was intended, and that to obtain it no advantage was taken of the confidential relations existing between him and his client, and that the transaction was honest and fair. *Ford v. Harrington*, 16 N. Y. 285; *Fisher v. Bishop*, 108 N. Y. 25. The difference in the various cases to be found consists mainly in the degree of suspicion attaching to each particular case, and the amount of evidence required to sustain the transaction.

At the time the contract was made the bank held the paving contracts as security for over $20,000, and did not recognize *McLellan* as a party interested in them. Grant and *McLellan* had got upon bad terms, and Grant had notified *McLellan* that he would have to get his share of the money somewhere, or cancel their partnership arrangements. The bank refused to make further advances, and Grant and *McLellan* would have no business relations with each other, so that the whole business stopped. The evidence tends to show that the plaintiff, by making proper explanations and assurances, prevailed upon the bank to make some further advances. Other difficulties intervening, and the financial panic coming on, the plaintiff made efforts to secure the money elsewhere, but without avail. Finally he applied to the common council to obtain the five per cent. reserve fund on the contract, being $10,800. The application was successful, and the work was carried on to completion. The plaintiff got the Security Savings Bank to agree that it would not interfere with *McLellan's* share of the profits if the matter was carried on and completed and the plaintiff

would see that the money so received was not diverted from its proper purposes, but would look to Grant's share for Grant's individual indebtedness; and Grant in the meantime had agreed with the plaintiff to recognize *McLellan's* interest, and not to interfere with his share of the profits. When it became necessary to settle up the business the defendant *McLellan* repudiated his contracts with the plaintiff, and refused to recognize him as having any rights in the premises, and endeavored to sell and dispose of his share of the profits to other parties, to defeat the plaintiff's claim. The defendant testified that the plaintiff agreed to furnish the necessary money; that he agreed with him, if he would raise the money and save his interest for him with Grant, he would give him one third of his share of the profits; and he claimed the plaintiff had not advanced or furnished any money. The trial court found that *McLellan* "willingly, understandingly, and for a good and valuable consideration, and without fraud on the part of the plaintiff," entered into the contract and assignment, and that he "performed all of the conditions and requirements on his part." It is evident that *McLellan* was in great danger of losing his entire interest under the paving contracts, and that the services rendered by the plaintiff sufficed to put his interest in a proper condition, so that he realized a large sum for profits. The finding of the circuit court appears to be sustained by the evidence. It is evident that the plaintiff acted in good faith, and his conduct appears fair, and that there was free volition and intelligent action on the part of the defendant.

But if we rest the case upon the basis that the relations of the plaintiff and defendant when the contract was made were strictly those of attorney and client and of a fiduciary character, the fairness of the contract is, we think, sufficiently vindicated. If the plaintiff was guilty of no fraud or undue influence, and if *McLellan*, in making the contract, was moved only by the impulses of his own will, the trans-

action, though in the event favorable to the attorney and unfavorable to the client, cannot be assailed. *Tragman v. Littlefield,* 18 N. Y. Supp. 583, 584. As was said in *Fowler v. Callan,* 102 N. Y. 395, 397: " Such contracts are of common occurrence, and, while their propriety has been vehemently debated, they are not illegal, and when fairly made are steadily enforced."

After a careful consideration of the case, we do not see any ground upon which the defendant ought to be allowed to avoid his contract, and we think that the judgment of the circuit court should be affirmed.

*By the Court.*— The judgment of the circuit court is affirmed.