CASSERLEIGH v. WOOD et al.

(Circuit Court of Appeals, Eighth Circuit. November 3, 1902.)

No. 1,728.

1. CONTRACTS—CONSIDERATION.

Whether a contract rests upon a valuable consideration or otherwise must be determined by conditions as they exist when it is made; and, if the promisor supposes that the thing which he seeks to obtain and promises to pay for will be beneficial to him, he cannot avoid his promise on the strength of a subsequent discovery that it was really nonessential, or of no value.

**2.** Federal Courts—Following State Decisions—Application of Statute
to Particular Facts.

While the federal court is bound by the construction placed by the
highest court of a state upon a local statute, yet, when it becomes neces-
sary to apply the statute, as construed by the local court, to a particular
contract, and determine, upon a consideration of all of the provisions of
the contract, whether it is violative of the statute as it has been construed,
a federal court is entitled to express an independent judgment, the ques-
tion involved being one of general law, rather than of statutory construc-
tion.

**3.** Specific Performance—Contracts against Public Policy.

Complainant contracted with defendant to furnish evidence deemed es-
sential to establish the defendant's interest as an heir in certain mining
property, and to commence litigation, if necessary, to recover such in-
terest. The agreement contemplated that he would produce the witnesses
to establish the case, and that, in effect, he should have full direction
and control of the litigation through attorneys whom he individually was
to select and employ, and that he was "to be at all cost in the matter,"
in consideration of which the defendant contracted to give the complain-
ant two-thirds of all his interest recovered through law, if legal pro-
ceedings were commenced. *Held* that, even if the contract in question
was not voidable under the local statute against maintenance, being, as
it would seem, a contract entered into for the purpose of gambling in
litigation, yet that such an agreement was voidable on grounds of public
policy; and that, even if it should be regarded by a court of law as not
so voidable, yet that it was so far meretricious, and tainted with ille-
gality, that a court of equity would not enforce it specifically.

Appeal from the Circuit Court of the United States for the District
of Colorado.

This is a bill in equity, which was filed by John H. Casserleigh, the appel-
lant, against James O. Wood and the Aspen Mining & Smelting Company and
Jerome B. Wheeler, the appellees, to compel the specific performance of a
contract made by James O. Wood on July 21, 1887, which is in words and
figures following, to wit:

"This agreement, made and entered into this 21st day of July, A. D. 1887,
by and between James O. Wood, of Milwaukee, Wisconsin, party of the first
part, and J. H. Casserleigh, of Denver, Colorado, party of the second part,
witnesseth: That whereas, the said party of the first part, son of the late
William J. Wood, deceased, is desirous to recover at law, or by settlement oth-
erwise, all interest he may have or may have had in and to a certain mining
claim located near Aspen, Colorado, in Roaring Fork mining district, known
as the 'Emma,' and now claimed by Jerome B. Wheeler and others, and as
certain evidence necessary to establish the citizenship of the said Wm. J.
Wood, who was the locator of said mine, is now in the possession of said
party of the second part, procured by him at a large expense of money and
use of time, and in consideration of the premises herein stated, I, the party
of the first part, do hereby agree to give unto the said party of the second
part a two-thirds (⅔) of all my interests in and to the amount recovered for
me through law, if legal proceedings are commenced, and, if a settlement
is had without legal proceedings, then and in that case the said second
party is to receive a one-quarter (¼) of all my said interest in and to the
amount recovered by such settlement. The said second party is to be at
all cost in the matter, and such proceedings as are necessary to a settlement
to be commenced forthwith by the said second party or his assignee.

"James O. Wood. [Seal.]

"Signed and acknowledged before me this 21st day of July, A. D. 1887.
"[Seal.] Geo. A. McGarigle, Notary Public, Wis."

¶ 2. State laws as rules of decision in federal courts, see notes to Griffin v.
Wheel Co., 9 C. C. A. 548; Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29
C. C. A. 553.

The bill alleged, in substance, that after the execution of the aforesaid contract the complainant, Casserleigh, being unable to obtain a settlement of the claim, retained an attorney by the name of Thomas A. Green to bring an action against Jerome B. Wheeler and the Aspen Mining & Smelting Company, two of the appellees herein, for the recovery of such interest in the Emma mine as James O. Wood, who executed the aforesaid agreement, was entitled to in right of his father, William J. Wood, deceased; that he furnished the said attorney all the necessary information and documentary evidence then in his possession upon which to institute said suit, and arranged with said attorney for compensation for his services, and assigned to him, in payment for his services in prosecuting the litigation, a one-half interest in the aforesaid contract; that the action in question was brought by said Green on April 14, 1888,—only a short time before the right of action to recover said interest would have been barred by the statute of limitations,— and that after various proceedings had in said suit it resulted in a decree on July 30, 1896, under and by virtue of which decree James O. Wood became entitled to one forty-second of whatever interest Jerome B. Wheeler and the Aspen Mining & Smelting Company had in the stock of the Compromise Mining Company growing out of a conveyance of a part of the Emma mine to said Compromise Mining Company, and to a one-tenth interest in a judgment against said Wheeler in the sum of $195,252.97, with interest thereon at the rate of 8 per cent. per annum from July 16, 1894, and also to a one-tenth interest in a judgment against said Wheeler and the Aspen Mining & Smelting Company in the sum of $209,328.95, with interest thereon at the rate of 8 per cent. per annum from July 16, 1894. The complainant below further alleged, in substance, that on or about August 1, 1892, he had served on Jerome B. Wheeler individually, and upon him as president of the Aspen Mining & Smelting Company, a notice of his interest in the aforesaid judgment, which he had acquired under and by virtue of the aforesaid contract with James O. Wood; that he had fully performed all the conditions of the aforesaid contract with James O. Wood; that, besides compensating said attorney, Thomas A. Green, who brought said suit, for his services in attending to the litigation so that Wood would not be at any further cost in the matter, he had furnished said attorney the necessary information and documentary evidence then in his possession to enable said attorney to bring and prosecute said suit, and had furnished him with documentary evidence showing that William J. Wood, deceased, had declared his intention to become a citizen of the United States in Allen county, Kan., long prior to his removal to Colorado, and before he had taken part in the location of the Emma mine. He further averred that he had consulted with the attorney whom he had employed to bring said suit from time to time, and had carefully watched all of the proceedings in said cause, and had held himself ready at all times to yield any aid and assistance therein, if he was called upon; that he had theretofore made a demand upon the defendants for a recognition of his interest in the judgment which was recovered in said action under and by virtue of his contract with Wood, but that, notwithstanding such demand, the defendants below had refused to recognize his interest under said existing contract, and that the defendant Wood had failed and refused to keep and perform the terms of said agreement. In view of the premises, the complainant prayed that it might be decreed that James O. Wood held in trust for him the title to one-third of an undivided one forty-second interest in said Emma mine; that he was also entitled to one-third of one forty-second of whatever interest Wheeler and the Aspen Mining & Smelting Company had in the stock of the Compromise Mining Company growing out of a conveyance of a part of the Emma mine to said company, and that it might be decreed that the complainant was entitled to one-third of one-tenth of the two money judgments rendered as aforesaid on July 30, 1896, against Jerome B. Wheeler and against the Aspen Mining & Smelting Company; and that it might be further decreed that the complainant had a lien upon all and everything which was recovered by James O. Wood in the suit which had been brought as aforesaid in his behalf under and by virtue of the provisions of the aforesaid contract. The defendants below demurred to the bill generally upon the ground that it did not contain any matter of equity entitling

the complainant to any relief against the defendants. This demurrer was sustained, and the bill was dismissed. To obtain a reversal of the decree the complainant below has brought the case to this court by appeal.

George W. Taylor (F. J. Mott, on the brief), for appellant.

C. S. Thomas and L. M. Cuthbert (W. H. Bryant, H. H. Lee, Henry T. Rogers, and Daniel B. Ellis, on the brief), for appellees.

Before SANBORN and THAYER, Circuit Judges, and LOCHREN, District Judge.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The general question which arises on this appeal is whether the contract that was entered into by James O. Wood, one of the appellees, under date of July 21, 1887, is a contract of such a nature that it can be specifically enforced by a court of equity; and the determination of this question depends upon the further inquiry whether the contract was founded upon a valuable consideration, as well as upon the inquiry whether it is voidable either on account of its champertous character or because its enforcement would be opposed to public policy. In the lower court the bill was dismissed, as it seems, upon the ground that, as this court had held on July 5, 1892, in the case of Billings v. Smelting Co., 10 U. S. App. 1, 2 C. C. A. 252, 51 Fed. 338, that the evidence which Casserleigh had in his possession, namely, "evidence necessary to establish the citizenship of * * * William J. Wood," was in fact immaterial to the successful prosecution of the suit by the Wood heirs to recover their interest in the Emma mine, the promise of James O. Wood to give a two-thirds part of his interest in the mine for the production and use of that evidence was a promise without consideration, and therefore voidable at the election of the promisor. We are of opinion, however, that if James O. Wood, at the time the contract was entered into, supposed that the evidence to establish the citizenship of his father, which was in Casserleigh's possession, was material and necessary to the successful prosecution of his claim to an interest in the Emma mine, then the contract which he signed was founded upon a valuable consideration, although it was subsequently decided by this court that such testimony was not essential to the establishment of his claim. A promise to pay a given sum for property, or for information which the promisor supposed that he needed, at the time of the making of the promise, surely does not become voidable because of a subsequent discovery that the property or the information was not needed. Whether a contract rests upon a valuable consideration or otherwise must be determined by conditions as they exist when it is made; and, if the promisor supposes that the thing which he seeks to obtain and promises to pay for will be beneficial to him, he cannot avoid his promise on the strength of a subsequent discovery that it was really nonessential, or of no value.

The important question in the case is whether the contract in question is voidable for either of the other reasons mentioned above; that is to say, because it is champertous, or because it is opposed to public policy. That the contract is champertous when tested by the

rules of the common law admits of no controversy. According to the usual definition of champerty, it is that species of "maintenance" which consists of a bargain with a plaintiff or a defendant for a part of the thing recovered in a suit at law or in chancery, be it land or something else, which suit the champertor undertakes to carry on or prosecute at his own expense; and at common law champerty was a public offense. Bouv. Law Dict. 305; Chit. Cont. 676; 4 Bl. Comm. 134, 135; Duke v. Harper, 2 Mo. App. 1. Now, by the contract under consideration, it was agreed that Casserleigh should receive two-thirds of whatever might be recovered by Wood by means of legal proceedings on account of his interest in the Emma mine; also that Casserleigh was "to be at all cost in the matter," which plainly means that he should pay all costs if an action was brought, and that he would save Wood harmless therefrom. It is obvious, therefore, that at common law the contract in question was voidable for illegality.

The case, however, cannot be determined solely from the standpoint of the common law, since the contract was a Colorado contract, and in that state the old English statutes relative to maintenance and champerty never were in force, or, if once in force, are so no longer, because the common law on the subject has been superseded by a statute (Mill's Ann. St. Colo. § 1299), which is as follows:

"If any person shall officiously intermeddle in any suit at law or in chancery that in no wise belongs to or concerns such person, by maintaining or assisting either party, with money or otherwise, to prosecute or defend such suit with a view to promote litigation, every such person so offending shall be deemed to have committed the crime of maintenance, and upon conviction thereof shall be fined and punished as in cases of common barratry: provided, that it shall not be deemed maintenance for a man to maintain a suit of his kinsman or servant or poor neighbor out of charity."

The courts of Colorado have held that this statute supplants the common law on the subject of maintenance in that state. Kutcher v. Love, 19 Colo. 542, 546, 36 Pac. 152. At common law, maintenance is declared to be an "officious intermeddling in a suit that no way belongs to one, by maintaining or assisting either party with money or otherwise." Chit. Cont. 676; 4 Bl. Comm. 134. The definition of the same offense by the Colorado statute is somewhat different, in that it requires such officious intermeddling by assisting a litigant with money or otherwise to be done "with a view to promote litigation"; and in a recent case which was brought by this appellant against another of the Wood heirs (Casserleigh v. Wood, 14 Colo. App. 265, 59 Pac. 1024), where a contract precisely like the one now involved was under consideration, it was held that the gist of the offense, under the Colorado statute, consists of the intent or purpose with which the act of intermeddling is done. It was further held that the statutory offense is committed when a man, with a view of fomenting litigation, encourages another to bring a suit or to make a defense which otherwise he would not have brought or made; and that a contract to assist another in the prosecution of a suit, although the intermeddler engages to bear the costs of the action, and to furnish a part of the evidence which is

deemed essential to maintain it, does not violate the statute unless the contract was entered into in bad faith by the intermeddler, either for the purpose of oppressing others, or with intent to gamble in litigation, or for the purpose of inducing suits which otherwise would not have been commenced. Casserleigh v. Wood, 14 Colo. App. 265, 272, 273, 59 Pac. 1024. This decision has very recently been affirmed by the supreme court of Colorado in an opinion not yet reported. Wood v. Casserleigh, 71 Pac. 360. This construction of the statute is binding, as a matter of course, upon the federal courts, it being an authoritative interpretation of a local law. But we are of opinion that when it becomes necessary to apply the statute, as thus construed by the local courts, to a particular contract, and determine upon a consideration of all of its provisions whether it is violative of the statute, a federal court is entitled to express an independent judgment. In the case last supposed the question to be determined is one of general law, rather than of statutory construction, and the decision of the federal court thereon ought to be something more than a mere echo of a previous decision of the same question by a court of co-ordinate jurisdiction, although such a decision is entitled to the highest respect, and should be regarded as persuasive authority.

Turning to the contract now under consideration, it is to be observed that the compensation which Casserleigh was to receive for producing the evidence in his possession was wholly contingent on the success of the litigation which he was about to institute. He was not to be paid in any event for the evidence of citizenship which he had secured, or for his other services, but his compensation depended entirely on his bringing the litigation to a successful termination. It furthermore appears from the averments of the bill that the evidence to establish the citizenship of William J. Wood, deceased, and his identity as one of the locators of the Emma mine, did not consist exclusively of documentary evidence, which could not well be falsified. On the contrary, some facts which were deemed of vital importance when the contract was made were to be established by the mouths of witnesses whom Casserleigh had discovered, or claimed to have discovered. Moreover, the agreement contemplated that he would produce these witnesses, and that he should, in effect, have full direction and control of the litigation through the attorneys whom he individually employed, since it is alleged that Wood resided in another state when the contract was signed, and contemplated remaining there during the progress of the suit. Another fact, already mentioned, should also be kept in mind, namely, that Casserleigh made himself responsible for all the costs in the action that might be incurred, and this irrespective of the result of the litigation. In view of these considerations it is difficult to resist the conviction that Casserleigh's purpose in entering into the contract was not to aid a poor and helpless litigant in the prosecution of a claim which he believed to be meritorious, but that his real object was to take advantage of a flaw in another's title for his own benefit; or, in other words, to gamble in litigation. The contract shows that he was to receive by far the greater part

of the money or property which might be recovered if an action was brought and successfully prosecuted, and that he intended to profit more largely by the suit than the person whom he ostensibly befriended. We think, therefore, that it might well be held that the contract in question is voidable under the Colorado statute of maintenance, within the construction which has been placed on the statute by the local courts, because it appears from the provisions of the contract and the allegations of the bill that Casserleigh, by promising to produce evidence which was deemed absolutely essential to a recovery, and by engaging to bear the costs of litigation, induced the bringing of a suit concerning a subject-matter in which he had no interest whatever; and that he did so for his own benefit, hoping to derive a large profit from money invested in maintaining a law suit. Most any one would permit an action to be brought in his name under the favorable conditions on which the appellant proposed to bring a suit against the owners of the Emma mine, and it may well be that the action would not have been brought but for his active efforts in that behalf and promise of assistance.

But even if the contract in question is not voidable under the aforesaid statute and for the reasons heretofore stated, the question nevertheless arises whether such a contract is not so far opposed to public policy that the courts—particularly a court of chancery—should decline to enforce it. In the case of Peck v. Heurich, 167 U. S. 624, 630, 17 Sup. Ct. 927, 42 L. Ed. 302, Mr. Justice Gray, speaking for the court, said, in substance, that, even where the English statutes of champerty have become obsolete, or have never been adopted, an agreement by an attorney to prosecute a suit at his own expense to recover an interest in land in which he has no personal interest, present or contingent, in consideration of receiving a part of what is recovered, is regarded as voidable on grounds of public policy according to the rules of the common law as generally recognized in those states where they have not been modified by statute. Many other courts have also held that, while a lawyer may agree to take a contingent fee, to be paid out of what is recovered in an action, yet it is contrary to a sound public policy to uphold contracts where a lawyer, in addition to agreeing to take a contingent fee, payable in kind out of what is recovered, also stipulates to bear all of the costs of the action, thereby inducing others to bring doubtful and speculative suits, without risk to themselves, which otherwise might not have been brought. Railway Co. v. Brady, 39 Neb. 27, 50, 57 N. W. 767; Boardman v. Thompson, 25 Iowa, 487, 499; Jewel v. Neidy, 61 Iowa, 299, 300, 16 N. W. 141; Lafferty v. Jelley, 22 Ind. 471; Aultman v. Waddle, 40 Kan. 195, 202, 19 Pac. 730; Dockery v. McLellan, 93 Wis. 381, 67 N. W. 733. See, also, Belding v. Smythe, 138 Mass. 530, 532; Duke v. Harper, 66 Mo. 51, 37 Am. Rep. 314; Brown v. Bigne, 21 Or. 260, 28 Pac. 11, 14 L. R. A. 745, 28 Am. St. Rep. 752. If contracts of that kind, when made, either by a lawyer or a layman, are upheld and enforced, the tendency would undoubtedly be to occasion much unnecessary, vexatious, and oppressive litigation, as persons can generally be found who are ready and willing to take advantage of any defect or flaw, no matter how slight, in another's

title, and to prosecute an action to upset it, at their own expense, especially if the property involved is of great value, and the reward, in case of success, promises to be large. Men can be found who are prone to speculate in litigation as in other subjects. While such contracts may at times result in the enforcement of rights that would otherwise be lost, yet we are persuaded that, as a general rule, they tend to disturb the peace of society and occasion suits that otherwise would not have been brought, and which ought not to have been brought. We are of opinion, therefore, that, even if it be conceded that there is no statute in the state of Colorado expressly interdicting the practice of that species of maintenance which is termed "champerty," yet, in virtue of the general rules of the common law, which are in force there as they are everywhere, the contract now under consideration is voidable, and the enforcement thereof ought to be denied on the ground of public policy. We are also of opinion that, even if an action at law could be maintained for a breach of the contract, yet it is so far meretricious and tainted with illegality that a court of equity ought not to enforce it specifically.

The decree appealed from being for the right party, it is accordingly affirmed.