Young, Respondent, vs. Murphy and others, Appellants.

*November 19—December 11, 1903.*

*Attorney and client: Purchase of client's property: Evidence: Burden of proof: Equity: Cancellation of instruments.*

1. In purchases by an attorney of his client's property, the transaction is always viewed with suspicion, and the attorney must prove the utmost good faith on his part or the transaction will be set aside by a court of equity.
2. Where an attorney purchased his client's real estate and thereafter mortgaged the same to one who had full knowledge of the client's equities therein, on the findings of the court, supported by the evidence, no error was committed in ordering the deed and mortgage to be canceled.

Appeal from a judgment of the circuit court for Richland county: Geo. Clementson, Circuit Judge. *Affirmed.*

This is an action in equity to cancel a deed and subsequent mortgage on certain real estate. The action was originally commenced against *Michael Murphy* and *Nora Murphy,* his wife, alone, but by an amended summons and complaint A. M. Lee and *Emma H. Marsh,* the brother-in-law and niece, respectively, of the defendant *Michael Murphy,* were brought into the action as defendants, and, Lee having died during the pendency of the action, the same was revived by bringing in Kate Lee, his widow, and administratrix of the estate, as a party. By the findings of the court it appears, in substance, that the plaintiff is an uneducated man, who can neither read nor write, and that the defendant *Michael Murphy* is a practicing lawyer; that on October 13, 1898, the defendant *Michael Murphy* sold and conveyed to the plaintiff an eighty-acre tract of land in Richland county for $1,000, of which purchase price $500 was paid by the transfer to the defendant of eighty acres of land in Juneau county, and the remaining $500 was secured by the plaintiff's notes and a mortgage upon the land sold; that on the 24th of October, 1898,

*Michael Murphy* assigned the $500 mortgage to said A. M. Lee, and that *Murphy* was at that time the agent of Lee in loaning and collecting money, and remained such until Lee's death at some time in 1902; that plaintiff paid in various ways $150.60 of said notes and mortgage prior to October 1, 1901; that Lee commenced foreclosure of said mortgage December 18, 1901, *Murphy* acting as his attorney, and continuing to act as such in said action after the death of Lee, and after the revival thereof in the name of Kate Lee as administratrix; that in May, 1899, the plaintiff consulted with the defendant *Michael Murphy* as an attorney, concerning a note held by one James, of Richland Center, which the plaintiff had signed as security, and said *Murphy* then represented to the plaintiff that James was about to commence a suit on said note, and that he (*Murphy*) did not purpose to have any judgment liens upon the land which he had sold to the plaintiff, and advised the plaintiff to make a deed of said land to his wife, *Nora Murphy,* agreeing that he would not deliver it, but would simply have it recorded, and hold it subject to the control of the plaintiff, and obtain a quitclaim deed from said *Nora Murphy* to the plaintiff whenever it was demanded; that the plaintiff was unable to pay the said James note, and, believing and relying on *Murphy's* representation, he executed a deed of said land to *Nora Murphy,* and left the same in the possession of *Michael Murphy;* that *Nora Murphy* was not present at the time of the making of said deed, and knew nothing about it, and paid nothing for said deed, and that *Michael Murphy* paid nothing for said deed, and that the same was never delivered to *Nora Murphy,* and no consideration was paid by any one therefor; that none of the notes secured by said $500 mortgage were ever returned to the plaintiff; that plaintiff has continuously occupied said land and paid the taxes thereon since he purchased the same in October, 1898, and that the same was and still is of the value of $1,000; that plaintiff has demanded a reconvey-

ance of said land, and that the defendant *Nora Murphy* re-
fuses to reconvey the same; that on the 4th day of February,
1901, the defendant *Michael Murphy* gave his note to the de-
fendant *Emma H. Marsh* for $366, and thereafter said de-
fendant *Michael Murphy* and *Nora Murphy,* his wife, exe-
cuted a mortgage upon said eighty acres of land to secure
said note, but that the said *Emma H. Marsh* had full knowl-
edge of the equities of the plaintiff in the said land when
said mortgage was given, and is not a *bona fide* mortgagee
in good faith thereof. On these findings the court concluded
that the said deed from the plaintiff to *Nora Murphy* and the
mortgage to *Emma H. Marsh* should be canceled and set
aside, and from judgment in accordance with these con-
clusions the defendants *Michael* and *Nora Murphy* and
*Emma H. Marsh* appeal.

The cause was submitted for the appellants on the brief of
*Michael Murphy,* and for the respondent on that of *W. S.
McCorkle.*

WINSLOW, J. While the defendant *Michael Murphy* de-
nied that he was acting as attorney for the plaintiff when
he received the deed of the land in dispute, and also claimed
that there was a sufficient consideration for the transfer, we
find that there was ample evidence in the record to sustain
the findings of the trial court. Whatever might be the proper
view of the transaction had it occurred between parties deal-
ing at arm's length, where no relations of trust or confidence
exist, the law is well settled that no such transaction as the
one found by the court can be sustained where it takes place
between an attorney and his client. Attorneys are ministers
of justice as well as courts, and justice will not be contented
with half-hearted service on the part of her ministers, nor
will she tolerate a bargain counter within her temple. If an
attorney purchase his client's property, concerning which his
advice is sought, the transaction is always viewed with sus-

picion, and the attorney assumes the heavy burden of prov-. ing not only that there was no overreaching of the client, but that the client acted upon the fullest information and advice as to his rights.   In other words, the attorney must prove *uberrima fides,* or the transaction will be set aside by a court of equity.   These principles are so well established as to need no citation of authorities, and to the credit of the profession, be it said, it is rarely necessary to invoke them. Upon the facts found the trial court pursued the only course open to a court of equity.

*By the Court.*—Judgment affirmed.