# CASES DETERMINED

# January Term, 1917.

Armstrong, Executor, Respondent, vs. Morrow, Appellant.

*May 15—June 12, 1917.*

*Attorney and client: Transfer of client's property to attorney: Consideration: Undue influence: Burden of proof: Cancellation of instruments: Laches.*

1. Where property is transferred by a client to his attorney while such relation exists, it is incumbent on the attorney to show affirmatively either that he paid an adequate consideration for the property or that a gratuity was intended and that no advantage was taken of the confidential relations existing between him and his client to obtain it.
2. In an action by an executor to set aside an assignment of a mortgage, made by his testator to the defendant, who was then the testator's attorney, findings of the trial court that there was no valid consideration for such assignment, that the defendant had deeply ingratiated himself into the testator's confidence, and that the assignment was procured by improper and undue influence and was void, are *held* to be supported by the evidence.
3. The mere fact that the testator lived four years after such assignment was made and did not move to set it aside, does not show laches, where, so far as appears, the confidential relation and undue influence continued to about the time of the testator's death and there was nothing to arouse him to action.

APPEAL from a judgment of the circuit court for Marathon county: A. H. REID, Circuit Judge. *Affirmed.*

This action was brought by the executor of the estate of Walter H. Phillips, who died May 25, 1915, to set aside an assignment executed by Phillips on July 15, 1911, to the defendant of a mortgage for $10,900 running from the Oconto Brewing Company to Phillips, bearing date December 11,

1909.   The defendant for some twelve or fifteen years before the execution of said assignment had been the attorney, adviser, and intimate friend of Mr. Phillips.   At the time of the execution of the mortgage defendant advanced $1,250 of the consideration of said mortgage.

The plaintiff proved execution of the mortgage, recording of the assignment, relationship of attorney and client between Phillips and defendant, and rested.

The defendant, without acquiescing in the sufficiency of the proof, offered evidence of the circumstances of the transaction.   Phillips being dead, the defendant was not allowed to testify to personal transactions with the deceased, so the evidence was quite meager to show transactions between the parties.

The court found as facts:

That the defendant is a duly qualified and licensed attorney, admitted to practice in the year 1887 and actively practicing his profession in the city of Oconto ever since about 1895; that the plaintiff's testator, W. H. Phillips, died at Oconto, Wisconsin, May 28, 1915, at the age of eighty-two years, possessed of quite a large estate; that he left surviving him no widow nor children of his own, but did leave surviving a number of collateral relatives and two stepdaughters.

That said Phillips became involved in many lawsuits, and needed an attorney's services in many other matters, and the defendant, from 1895, was his regular and frequent representative and adviser; that in addition to going to said Morrow for advice on legal matters, said Phillips constantly consulted and advised with said Morrow on personal and business affairs; that he procured said Morrow to take care of many of his business transactions, consisting of the loaning of money, the collection of interest on his securities and rentals from his property, the payment of taxes, the advising as to investments, the obtaining of information concerning business matters, and in fact looked to him and consulted him in many matters of business, legal and personal, in which he was interested; that the relationship between said Morrow and Phillips became very intimate and close in a social and

friendly way as well as in a business way; that said *Morrow* would accompany said Phillips on various and diverse occasions, when he made trips to watering places, health resorts, and for other purposes, and would look after his interests and give him personal attention; that said relationship became very close and intimate, and the said *Morrow* deeply ingratiated himself in the confidence, esteem, and regard of said Phillips, and particularly during the last ten years or longer the said Phillips placed confidence in defendant's counsel and assistance, both in his litigation and in general business, and appeared to feel quite dependent upon him, and to rely greatly upon his counsel and assistance.

That on December 11, 1909, said Phillips, on request and with the professional aid of said *Morrow,* loaned to the Oconto Brewing Company, a corporation of Oconto, Wisconsin, the sum of $10,900, and as evidence of such loan, and to secure it, said corporation executed to said Phillips the note and mortgage described in the complaint in this action; that at the time said loan was made said Phillips was temporarily short of funds sufficient to make such loan, said shortage being $1,250, and the said *Morrow* advanced to said Phillips said sum of $1,250 with the understanding that the same was a mere temporary advancement or loan and would be repaid at the convenience of said Phillips; that at said time it was tacitly understood between said Phillips and said *Morrow* that said *Morrow* would retain and hold possession of said note and mortgage until said $1,250 was repaid to said *Morrow* with interest, and thereupon said *Morrow* took possession of said note and mortgage and placed the same in his private safe in his business office.

That on or about the 15th of July, 1911, said *Morrow* prepared and caused to be written on the back of said mortgage an assignment thereof in words, terms, and figures as set forth in Exhibit C, made part of the amended complaint, and said Phillips signed the same with knowledge of its contents and effect. That there was no valuable consideration for said assignment, past, present, or future; that on the 5th day of June, 1915, said *Morrow* caused said assignment and note and mortgage to be duly recorded in the office of the register of deeds of Oconto county, and then claimed and has ever since claimed to be the legal owner and holder of said

note and mortgage by virtue of said assignment; that said $1,250 was never repaid to said *Morrow;* that on the following dates the following payments of interest on said note were made by the mortgagor to said *Morrow,* which payments have ever since been retained by him, to wit:

| | |
|---|---|
| December 10, 1910 | $654 |
| December 26, 1911 | 654 |
| December 27, 1912 | 654 |
| January 7, 1914 | 654 |
| December 12, 1914 | 654 |

That there is no evidence in this case to show that the defendant in any wise himself advised or caused said Phillips to be advised by competent or disinterested advisers as to the propriety or impropriety, wisdom or unwisdom of the gift of said note and mortgage from the said Phillips to said *Morrow;* that said assignment and transfer of said note and mortgage were caused to be made and procured and brought about by improper and undue influence brought to bear by said *Morrow* upon said Phillips and the same is void because of the constructive fraud on the part of said *Morrow.*

The court concluded that the estate of Walter H. Phillips is the owner of the said note and mortgage, subject to the right of said *Morrow* to reimbursement in the sum of $1,250, together with interest thereon at six per cent. per annum from the date of said mortgage; that said assignment and the record thereof is a cloud upon the right, title, interest, and ownership of said estate in and to said note and mortgage, and the plaintiff is entitled to judgment directing delivery of said note and mortgage to the plaintiff and canceling the record of the assignment of said mortgage; that the plaintiff is entitled to have and recover of the defendant said sums of interest thereon collected by the said defendant aforesaid, with interest on each of said payments of interest from the date thereof at six per cent. per annum, less the said sum of $1,250 with interest thereon at six per cent. per annum from the date of said mortgage.

Judgment was rendered setting aside the assignment and for damages in the sum of $2,236.06, interest collected upon

the mortgage by defendant, and costs, from which judgment this appeal was taken.

For the appellant there was a brief by *Classon & O'Kelliher* of Oconto, attorneys, and *Kreutzer, Bird, Okoneski & Puchner* of Wausau, of counsel, and oral argument by *C. B. Bird.*

*Allan V. Classon* of Oconto, attorney, and *Edward M. Smart* of Milwaukee, of counsel, for the respondent.

KERWIN, J.   Many of the facts in the case are undisputed and others well established by the evidence.   We have set out the findings of fact in the statement of the case and shall refer to them in the opinion only in so far as may be thought necessary in discussing the material questions involved.

The defendant and deceased, Mr. Phillips, for many years before the assignment in question were close intimate friends, and the defendant was not only the attorney of Mr. Phillips, doing most of his legal business, but also his companion. The friendship was mutual, and each had confidence in the other.   Defendant's professional relations with Mr. Phillips commenced in 1895 and continued down to the time of Phillips's death.   Phillips died at Oconto May 29, 1915, possessed of quite a large estate.   He had been a widower for many years.   Up to 1897 defendant seems to have made book charges against Phillips quite regularly, but ceased doing so thereafter.   Canceled checks produced on the trial showed that defendant had paid Phillips a large amount of money, but there was nothing to show what was paid defendant for his services.   In fact the transactions between defendant and Phillips relating to services performed and amount paid were left by the proof uncertain.   The uncertainty in proof was due largely to the fact that defendant was not permitted to testify to transactions with the deceased, and to his failure to produce other competent evidence.   It is to be regretted that more definite and complete proof was not or could not have been made of the business relations be-

tween defendant and his client, Mr. Phillips, in view of the legal status existing between attorney and client. In view of the confidential as well as professional relations existing between defendant and Phillips, it was incumbent upon defendant to show that in all fiduciary dealings with Phillips he acted in good faith and without disadvantage to his client. In *Young v. Murphy,* 120 Wis. 49 (97 N. W. 496), it is said at page 51:

"If an attorney purchase his client's property, concerning which his advice is sought, the transaction is always viewed with suspicion, and the attorney assumes the heavy burden of proving not only that there was no overreaching of the client, but that the client acted upon the fullest information and advice as to his rights. In other words, the attorney must prove *uberrima fides,* or the transaction will be set aside by a court of equity. These principles are so well established as to need no citation of authorities, and to the credit of the profession, be it said, it is rarely necessary to invoke them."

The law on the subject is well settled in England and America. In *Gibson v. Jeyes,* 6 Ves. 276, Lord ELDON said:

"It has been truly said, an attorney is not incapable of contracting with his clients. He may deal for a horse, an estate, etc. A trustee also may deal with his *cestui que trust;* but the relation must be in some way dissolved; or, if not, the parties must be put so much at arm's length that they agree to take the characters of purchaser and vendor, and you must examine whether all the duties of those characters have been performed."

An attorney is an officer of the court whose duties are to aid in the administration of justice, and is held to a strict accountability in all his professional relations with his clients. Any undue advantage gained by the attorney over his client by deception or undue influence while the relation exists will not be upheld by the courts. *Young v. Murphy,* 120 Wis. 49, 97 N. W. 496; *Dockery v. McLellan,* 93 Wis. 381, 67 N. W. 733; *Vanasse v. Reid,* 111 Wis. 303, 87 N. W.

192. The cases between trustee and *cestui que trust* where a confidential relation exists are somewhat akin to the cases of attorney and client and so recognized by the authorities. *Puzey v. Senier,* 9 Wis. 370; *Disch v. Timm,* 101 Wis. 179, 77 N. W. 196; *Ludington v. Patten,* 111 Wis. 208, 86 N. W. 571.

The authorities generally, both English and American, hold that where the relation of attorney and client exists and property is transferred to the attorney by the client while such relation exists, and the transfer is claimed to be a gift, the burden of satisfying the court that the gift was uninfluenced by the attorney in his relations with his client is upon the attorney. *Young v. Murphy, supra; Wright v. Carter,* [1903] 1 Ch. 27.

In *Vance v. Davis,* 118 Wis. 548, 551, 95 N. W. 939, this court, in speaking of the proof necessary in fraud cases, said:

"Absence of such direct proof is, however, not final, for, in apparent contradiction of the ordinary rule requiring clear and direct proof of fraud, this and other courts have recognized the necessity of casting the burden of negative proof upon one who profits from a position of confidence and control by a conveyance of such character and made under such circumstances as to suggest improbability that it is the free act of the grantor, and probability that it is due to influence of the beneficiary, which his confidential relation makes easy, but renders difficult or impossible of direct proof."

It is incumbent upon the attorney in a case like the one at bar to show affirmatively either that he paid an adequate consideration for the property, or that a gratuity was intended and that no advantage was taken of the confidential relations existing between the attorney and his client to obtain it. *Dockery v. McLellan,* 93 Wis. 381, 67 N. W. 733; *Vance v. Davis,* 118 Wis. 548, 95 N. W. 939; 6 Corp. Jur. 691; 2 Pomeroy, Eq. Jur. (3d ed.) § 957, p. 1751; Id. § 958, p. 1757; Bigelow, Fraud, 265; *Nesbit v. Lockman,* 34 N. Y. 167; *Whipple v. Barton,* 63 N. H. 613; *Thomas*

*v. Turner's Adm'r,* 87 Va. 1, 12 S. E. 149. Many other cases, both English and American, holding substantially the same strict rule laid down in the authorities heretofore referred to might be cited.

The authorities cited in this opinion and many others referred to in the able brief of counsel for respondent lay down general rules. Each case, of course, must depend upon its particular facts. What might be sufficient evidence to turn the scale in one case might not be in another. The dominating influence of the attorney and the weak, confiding, and submissive character of the client in one case might require far less proof than in another case where the client was of a strong and aggressive personality and not easily influenced by his attorney.

The court below found that there was no valid consideration for the assignment; that the assignment was procured by improper and undue influence and void; that *Morrow* had deeply ingratiated himself into Phillips's confidence. These findings are supported by the evidence and warrant the judgment entered.

The established facts bring the case clearly within the doctrine repeatedly laid down by the courts. The assignment, therefore, in connection with the facts and circumstances shown by the evidence, was presumptively invalid unless shown by the evidence to be valid. No facts were proved suficient to rebut the presumption.

It is further claimed by appellant that, since Phillips lived four years after the assignment, he was guilty of laches in not moving more seasonably to set the assignment aside. This contention is untenable. So far as appears from the record, the confidential relation and undue influence existing before the assignment continued thereafter to about the time Phillips died, and there was nothing to arouse him to action, hence there was no delay amounting to laches.

We are satisfied that the judgment of the court below is right and should be affirmed.

*By the Court.*—The judgment is affirmed, with costs.

ROSENBERRY, J., took no part.